******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

RICHARD M. PATROWICZ ET AL. *v.*
BARRY PELOQUIN
(AC 40662)

Keller, Elgo and Moll, Js.

*Syllabus*

The plaintiffs, R and D, sought to recover damages from the defendant for,
inter alia, breach of contract in connection with a series of eighteen
loans that they had made to the defendant, who allegedly failed to pay
on the loans. The defendant, who was self-represented throughout trial
and on appeal, filed an answer and five special defenses, including that
the action was barred by the statute of frauds (§ 52-550 [a] [6]), which
requires any agreement for a loan in an amount exceeding $50,000 to
be in writing and signed by the party to be charged. At trial, early on
during the plaintiffs' case-in-chief, D had exited the courtroom after
exchanging words with the defendant and did not return. After the
plaintiffs rested their case, the defendant attempted to call D as a witness
but she was not present in the courtroom and he had not subpoenaed her
to testify. The defendant requested a continuance in order to subpoena
D, which the trial court denied. Thereafter, the trial court rendered
judgment in favor of the plaintiffs in the amount of $48,168.66 and denied
the defendants' special defenses, from which the defendant appealed
to this court. *Held*:

1. The trial court did not abuse its discretion in denying the defendant's
   request for a continuance in order to subpoena D; in denying the defen-
   dant's continuance request, that court was mindful of its duty to effec-
   tively manage its caseflow and enforce the expectation that the trial,
   which was scheduled for only one day, would go forward as assigned,
   and given that the defendant had failed to subpoena D in the time leading
   up to trial despite having previously filed an application for the issuance
   of a subpoena for another witness in this case, that he did not request
   the continuance to subpoena D until the day of trial and after the
   plaintiffs had concluded their case-in-chief, and that he admitted that
   he did not have any other witnesses available to testify because he
   had not anticipated that the plaintiffs' case-in-chief would conclude as
   quickly as it did, the court reasonably could have concluded that the
   defendant's request for a continuance was a dilatory tactic intended to
   delay the trial, and its denial of the defendant's continuance request,
   therefore, was neither arbitrary nor unreasonable.
2. The defendant could not prevail on his claim that the trial court committed
   reversible error by permitting a material variance between the amount
   of damages alleged in the complaint and the amount pursued at trial,
   without requiring the plaintiffs to file an amended complaint, which, he
   claimed, wrongly allowed the plaintiffs to evade the application of the
   statute of frauds by reducing the claimed contractual damages to an
   amount below the $50,000 threshold contained in § 52-550 (a) (6); that
   court properly found, on the basis of the eighteen loans that the plaintiffs
   had made to the defendant and the plaintiffs' reliance on the defendant's
   promise to repay those loans, that the plaintiffs had fully performed their
   contractual obligations, and because the doctrine of part performance
   precluded the application of the statute of frauds in this case, regardless
   of whether the loan in question exceeded the statutory threshold of
   $50,000, any variance in the claimed amount of damages was immaterial,
   and the defendant could not demonstrate reversible error on the part
   of the trial court in failing to compel the plaintiffs to file an amended com-
   plaint.

Argued January 23–officially released May 21, 2019

*Procedural History*

Action to recover damages for, inter alia, breach of
contract, and for other relief, brought to the Superior
Court in the judicial district of Windham and tried to

the court, *Boland, J.*; judgment for the plaintiffs, from which the defendant appealed to this court. *Affirmed.*

*Barry L. Peloquin*, self-represented, the appellant (defendant).

*Ernest J. Cotnoir*, for the appellees (plaintiffs).

*Opinion*

ELGO, J. In this breach of contract action, the self-represented defendant, Barry Peloquin, appeals from the judgment of the trial court rendered in favor of the plaintiffs, Richard M. Patrowicz and Deborah Patrowicz.[1] On appeal, the defendant challenges the court's (1) denial of his request for a continuance following the close of the plaintiffs' case-in-chief and (2) determinations with respect to his statute of frauds defense. We affirm the judgment of the trial court.

In its memorandum of decision, the court found the following relevant facts. The plaintiffs are husband and wife, who jointly own a twenty-six acre parcel of land in Thompson. After retiring from a career as a millwright, Richard began operating a small forestry business on the property.

In 2012 or 2013, a mutual friend introduced the plaintiffs to the defendant. At that time, the defendant resided in the town of Pomfret, where zoning regulations prohibited the defendant from parking log trucks and other equipment on his residential property. The plaintiffs met with the defendant, and the parties subsequently reached an agreement, under which the defendant was permitted to store his commercial logging equipment on the plaintiffs' property.

As the court found, the plaintiffs learned "[i]n short order . . . that zoning compliance was not the defendant's only problem. His equipment was in need of repairs or replacement, and at times his cash flow was insufficient to afford payment of his monthly home mortgage and other bills. [The defendant] turned to the plaintiffs for assistance." The court further found that the plaintiffs subsequently made a series of loans to the defendant, all with the expectation of repayment.[2] As Richard testified at trial, the plaintiffs entered into a "verbal agreement" with the defendant on the basis of his "guarantee" that he would fully repay those loans.

When the defendant failed to repay those loans, the plaintiffs commenced this breach of contract action in December, 2015.[3] In his answer, the defendant denied the material allegations of the plaintiffs' complaint, including the allegation that he had promised to repay the loans in question. The defendant also asserted five special defenses, only one of which is relevant to this appeal. In his second special defense, the defendant alleged that the breach of contract count was barred by the statute of frauds set forth in General Statutes § 52-550.[4] The defendant filed numerous motions with the trial court over the next thirteen months, including a motion to dismiss, a motion for summary judgment, a motion for a default judgment, an "emergency motion for discovery," a motion to remove the plaintiffs' legal counsel, and a motion in limine, all of which were denied by the court.

A court trial was held on March 10, 2017. In their case-in-chief, the plaintiffs offered the testimony of Richard, who was subject to lengthy cross and recross-examination by the self-represented defendant.[5] In addition, the plaintiffs introduced, and the court admitted, into evidence various financial documents, including purchase receipts, credit card statements, and copies of cancelled checks from the plaintiffs made payable to and signed by the defendant. Also admitted into evidence was a promissory note executed on October 7, 2013, regarding the defendant's purchase of a log truck for $8000.[6]

The defendant's case-in-chief consisted of additional testimony from Richard and six documents that were admitted into evidence as full exhibits. In his cross-examination of Richard during the plaintiffs' case-in-chief and his direct examination of Richard as part of his defense, the defendant repeatedly attempted to offer contrasting statements of fact in response to Richard's testimony. Each time, the court advised the defendant that such statements were improper and clarified that the defendant was free to offer such evidence during his own testimony.[7] The defendant nonetheless declined to testify as a witness at trial. For that reason, when the defendant attempted to introduce his own affidavit into evidence during his case-in-chief, the court denied that request. As the court stated, "I'm not [going to] allow . . . your affidavit when you don't want to testify and be subject to cross-examination."

In its subsequent memorandum of decision, the court found the defendant in breach of contract, stating: "Although the defendant, who represented himself, denied virtually all the essential allegations of the complaint, he declined to testify. When he attempted (frequently) to offer evidence in his role as counsel, and not under oath, the court directed him to hold that information until he was sworn. At that time he could have expounded at length upon his version of the facts. He expressly declined to take advantage of that opportunity. Even to the extent that his arguments and objections could be credited, however, they did not undercut [Richard's] narrative of steady cash transfers to [the defendant] in varying amounts over a considerable period, without repayment. At best, they reflect a hazy suggestion on their recipient's part that all these transfers were a gift. In support of this contention [the defendant] offered no evidence whatsoever.

"This court had the opportunity to observe [Richard] throughout approximately five hours of testimony and cross-examination. While he cannot be described as razor-sharp in his recollection, he is generally credible and, in the details to which he testified, there was substantial correspondence between his testimony and the [documents that the plaintiffs] submitted [into evidence]. The court finds that the plaintiffs have proven by a preponderance of the evidence that they made

loans to the defendant totaling $48,518.66, of which he has repaid a mere $350. That leaves $48,168.66 due and owing." The court also rejected all five special defenses raised by the defendant. The court rendered judgment in favor of the plaintiffs in the amount of $48,168.66, and this appeal followed.

I

The defendant first claims that the court abused its discretion in denying his request for a continuance following the close of the plaintiffs' case-in-chief.[8] We disagree.

The following additional facts are relevant to the defendant's claim. Trial commenced on March 10, 2017, with the presentation of the plaintiffs' case-in-chief. Early in Richard's testimony on direct examination, the defendant objected; in so doing, he sought to offer evidence to rebut Richard's testimony.[9] As the court overruled that objection, a brief colloquy ensued:

"The Defendant: Excuse me? Did you just say—swear at me?

"[Deborah]: Yeah, I did.

"The Court: All right.

"[Deborah]: I'm sorry.

"The Court: I'm going to—okay. [Deborah] is leaving the courtroom. That's probably going to solve the problem. I'll put on the record [that] there was an exchange of words between her and the defendant, but I think her leaving has resolved it."

The plaintiffs' counsel then continued his direct examination of Richard, followed by cross-examination by the defendant. There is no indication in the record before us that Deborah ever reentered the courtroom.

When Richard's testimony concluded, the plaintiffs rested their case-in-chief. The court at that time informed the defendant that "now it's your opportunity to testify or to call any other witnesses on your behalf." The defendant then stated that he wanted to call Deborah as his first witness. Noting that Deborah was not present in the courtroom, the court asked the defendant if he had served a subpoena on her. The defendant did not answer that query and instead argued that he was not required to do so under Connecticut law because Deborah was a party to the proceeding.[10] In response, the court explained that "she's a plaintiff, but she's not present so she's not required to be here unless you've subpoenaed her. . . . [Y]ou have the right . . . to have her under subpoena. But if you haven't issued a subpoena to her, she's not required to be here."

The defendant then requested a continuance to subpoena Deborah, which the court denied. The defendant nonetheless proceeded to argue that her testimony was "key to [his] case," without making any detailed proffer

as to the nature of Deborah's expected testimony.[11] Contra *State* v. *Gauthier*, 140 Conn. App. 69, 73, 57 A.3d 849, cert. denied, 308 Conn. 907, 61 A.3d 1097 (2013). The court again reminded the defendant that "[Deborah is] not here and you don't have any . . . way of compelling her to be here yet and I'm not recessing the trial to allow a subpoena to be sent out. . . . [M]aybe you've been taken by surprise, but it's not an unfair or illegal surprise. It's the kind of thing that attorneys would anticipate that if they want to have a person here who's a hostile witness, that they might have them under subpoena."

Undaunted, the defendant asked the court to explain why it would not permit him to seek a trial subpoena at that time. The court at that time reminded the defendant that the case had been scheduled for one day. When the defendant asked why the court was insistent on "holding [him] to one day," the court explained that it had "other business [that is] scheduled. Courts always have other business [that is] scheduled. . . . You don't make the schedule up at your convenience."

The court asked the defendant if any of the other witnesses named in his trial management report were present and ready to testify. When the defendant conceded that they were not, the court asked why they were not present, noting that "[i]t's trial day." The defendant responded: "Because I knew that [the plaintiffs' counsel] was going to put his trial on first—his case on first. . . . And I didn't think that we would get that far at this point to be honest with you." The court then asked the defendant if he could procure any of those witnesses in the next twenty minutes, and the following colloquy transpired:

"The Defendant: They weren't asked to answer to the complaint, Your Honor.

"The Court: So you're—you're trifling with me. You've listed them as witnesses, today is the trial date, it's 2 o'clock in the afternoon, and you're telling me none—

"The Defendant: Is there a point of law that I'm—

"The Court: —of them are available?

"The Defendant: —missing tremendously here?

"The Court: Pardon me?

"The Defendant: Is there a point of law that I'm just missing?

"The Court: [Yes.] The point of law is that when you have a trial, you come to court prepared to put the case on.

"The Defendant: I am.

"The Court: Oh, no, you're not. You've listed nine witnesses. One of them is present; the other eight are not. Are you ready to proceed? Can you get any of these

people here in the next twenty minutes?

"The Defendant: I don't think so.

"The Court: Then I don't think you're ready to proceed."

The defendant then opined that it was unfair that the court was "prohibiting [him] from examining somebody that showed up earlier today . . . ." In response, the court stated: "I'm not prohibiting you. I'm telling . . . you [that] you haven't done what it takes to get that person here" by way of subpoena. To that, the defendant replied: "That's none of the court's business. That's not my problem." The court then stated: "It absolutely is my business when [she is] not present and you want to call her. [There is] no subpoena. I cannot force her to be here absent a subpoena that you've served on her."

The court again reminded the defendant that he was free to testify on his own behalf to contradict Richard's testimony, to which the defendant replied, "I'm not going to take the witness stand . . . if that's what you're asking." The defendant then called Richard as a witness, who was questioned for an additional two hours. When Richard's testimony concluded, the defendant rested his case. The plaintiffs' counsel then indicated that he had no rebuttal to present, and the evidence was closed.

On appeal, the defendant claims that the court improperly denied his request for a continuance of the trial in order to subpoena Deborah. "[T]he determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. . . . In addition, we consistently have acknowledged that [o]ur role as an appellate court is not to substitute our judgment for that of a trial court that has chosen one of many reasonable alternatives." (Citation omitted; internal quotation marks omitted.) *State* v. *Rivera*, 268 Conn. 351, 378, 844 A.2d 191 (2004); accord *State* v. *Campbell*, 328 Conn. 444, 473, 180 A.3d 882 (2018) (reviewing court must determine whether trial court's denial of continuance request was arbitrary or unreasonable).

In the present case, the defendant did not raise his request for a continuance of the trial in order to subpoena Deborah until after the plaintiffs had concluded

their case-in-chief. It is well established that "[o]nce a trial has begun . . . a defendant's right to due process [does not entitle] him to a continuance upon demand." *State* v. *Hamilton*, 228 Conn. 234, 239, 636 A.2d 760 (1994). Rather, the appellate courts of this state are "especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of trial"; *Thode* v. *Thode*, 190 Conn. 694, 697, 462 A.2d 4 (1983); and "where the request for continuance comes after the plaintiff has rested his case." *Burke* v. *Ruggerio*, 24 Conn. App. 700, 706, 591 A.2d 453, cert. denied, 220 Conn. 903, 593 A.2d 967 (1991). The belated nature of the defendant's continuance request militates against a conclusion that the court abused its discretion in denying that request.

Furthermore, the aforementioned colloquy indicates that the court was mindful of its obligation to manage its caseflow when it denied the defendant's midtrial continuance request. As our Supreme Court has emphasized, "[i]n order to fulfill our responsibility of dispensing justice we in the judiciary must adopt an effective system of caseflow management. . . . [I]t is the responsibility of the court . . . when necessary, to enforce compliance with such standards. Our judicial system cannot be controlled by the litigants . . . ." (Internal quotation marks omitted.) *Miller* v. *Appellate Court*, 320 Conn. 759, 773, 136 A.3d 1198 (2016). For that reason, "[j]udges must be firm and create the expectation that a case will go forward on the specific day that it is assigned." (Internal quotation marks omitted.) *Kervick* v. *Silver Hill Hospital*, 309 Conn. 688, 709 n.9, 72 A.3d 1044 (2013). The court expressly adhered to that maxim in denying the defendant's continuance request.

It also is significant that the case had been scheduled for one day of trial. At the outset of his case-in-chief, the defendant nonetheless acknowledged that he had no other witnesses available to testify and candidly confessed that he "didn't think that we would get that far at this point to be honest with you." On that basis, the court reasonably could have construed the defendant's continuance request as dilatory in nature. See, e.g., *Great Country Bank* v. *Pastore*, 241 Conn. 423, 437, 696 A.2d 1254 (1997) (because "the motion for a continuance was merely a dilatory tactic . . . the trial court acted well within its discretionary authority to deny the motion").

In this regard, we note that the defendant, although self-represented, previously had filed an application for the issuance of a subpoena in this very case,[12] yet did not do so with respect to Deborah despite listing her as a witness on his trial management report.[13] The defendant's failure to subpoena Deborah in a timely manner further informs our consideration of whether the court abused its discretion in denying his continuance request. See *State* v. *Cecil J.*, 99 Conn. App. 274, 293,

913 A.2d 505 (2007) ("[i]n light of the defendant's opportunity to subpoena [a potential witness] in the months before trial, the trial court properly denied the motion for a continuance as untimely"), aff'd, 291 Conn. 813, 970 A.2d 710 (2009).

In reviewing the propriety of the denial of a continuance request, this court must indulge every reasonable presumption in favor of that exercise of discretion. See *State* v. *Rivera*, supra, 268 Conn. 378. On the particular circumstances of this case, we cannot say that the court's denial of the defendant's midtrial request for a continuance in order to subpoena Deborah was either arbitrary or unreasonable. The court, therefore, did not abuse its discretion in denying that request.

## II

The defendant also challenges the court's determinations with respect to his statute of frauds defense. More specifically, he contends that the court improperly permitted a material variance between the amount of contractual damages alleged in the plaintiffs' complaint and the amount pursued at trial and claimed by the plaintiffs in their posttrial brief.[14] That variance, the defendant argues, reflects a deliberate attempt by the plaintiffs to avoid the application of the statute of frauds by reducing the claimed contractual damages to an amount below the $50,000 threshold contained in § 52-550 (a) (6).[15] The defendant thus submits that the court's failure to require the plaintiffs to file an amended complaint constitutes reversible error. We do not agree.

"Under Connecticut law, the statute of frauds operates as a special defense to a civil action." *Grovenburg* v. *Rustle Meadow Associates, LLC*, 174 Conn. App. 18, 69, 165 A.3d 193 (2017). Its function "is evidentiary, to prevent enforcement through fraud or perjury of contracts never in fact made." *Lynch* v. *Davis*, 181 Conn. 434, 440–41, 435 A.2d 977 (1980); see also *Heyman* v. *CBS, Inc.*, 178 Conn. 215, 221, 423 A.2d 887 (1979) ("the primary purpose of the statute [of frauds] is to provide reliable evidence of the existence and the terms of the contract").

At the same time, that special defense generally does not apply when a plaintiff demonstrates partial performance with contractual obligations. As this court has explained, "[t]he doctrine of part performance . . . is an exception to the statute of frauds. . . . This doctrine originated to prevent the statute of frauds from becoming an engine of fraud." (Citation omitted; internal quotation marks omitted.) *Red Buff Rita, Inc.* v. *Moutinho*, 151 Conn. App. 549, 554–55, 96 A.3d 581 (2014). "[T]he elements required for part performance are: (1) statements, acts or omissions that lead a party to act to his detriment in reliance on the contract; (2) knowledge or assent to the party's actions in reliance on the contract; and (3) acts that unmistakably point

to the contract. . . . Under this test, two separate but related criteria are met that warrant precluding a party from asserting the statute of frauds. . . . First, part performance satisfies the evidentiary function of the statute of frauds by providing proof of the contract itself. . . . Second, the inducement of reliance on the oral agreement implicates the equitable principle underlying estoppel because repudiation of the contract by the other party would amount to the perpetration of a fraud." (Internal quotation marks omitted.) *SS-II, LLC* v. *Bridge Street Associates*, 293 Conn. 287, 295–96, 977 A.2d 189 (2009). Our review of a court's determination that a party has demonstrated part performance of a contract is governed by the clearly erroneous standard of review. See *Harley* v. *Indian Spring Land Co.*, 123 Conn. App. 800, 826–30, 3 A.3d 992 (2010).

In its memorandum of decision, the court found that the plaintiffs had made eighteen distinct loans to the defendant in accordance with the parties' agreement and in reliance on the defendant's promise of repayment. See footnote 2 of this opinion. Accordingly, the court found that the plaintiffs had demonstrated "full performance of the agreements benefitting the defendant, knowingly on his part, to the extent of $48,518.66 . . . ." The court thus held that "there is neither a factual nor a legal basis for holding that [the statute of frauds] defeats the plaintiffs' claims." The evidence adduced at trial by the plaintiffs substantiates that determination. For that reason, the court properly concluded that the doctrine of part performance precludes application of the statute of frauds in the present case.

Because the statute of frauds does not apply in the present case, the purported variance regarding the claimed amount of contractual damages is immaterial. See *Tedesco* v. *Stamford*, 215 Conn. 450, 461, 576 A.2d 1273 (1990) ("[o]nly material variances, those which disclose a departure from the allegations in some matter essential to the charge or claim, warrant the reversal of a judgment" [internal quotation marks omitted]). The defendant, therefore, cannot demonstrate reversible error on the part of the trial court in failing to compel the plaintiffs to file an amended complaint.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] For purposes of clarity, we refer to Richard M. Patrowicz and Deborah Patrowicz collectively as the plaintiffs and individually by first name.

[2] In its memorandum of decision, the court detailed eighteen "advances" that the plaintiffs made to the defendant as follows:

| Advance Number | Date | Amount | Purpose |
| --- | --- | --- | --- |
| 1. | Oct. 7, 2013 | $8000 | Purchase of Ford F600 log truck |
| 2. | Oct. 13, 2013 | $8500 | Purchase of stump grinder |
| 3. | Nov. 18, 2013 | $3315.69 | Tires, etc. |
| 4. | Dec. 5, 2013 | $1500 | Truck repair |
| 5. | Dec. 12, 2013 | $1740 | Cash advance |
| 6. | Dec. 30, 2013 | $637.63 | Repairs to log truck |
| 7. | Dec. 31, 2013 | $8500 | Purchase of boom truck |

| 8.  | Mar. 13, 2014 | $1740    | Cash advance |
|-----|---------------|----------|--------------|
| 9.  | April 7, 2014 | $612.50  | Towing of truck |
| 10. | June 24, 2014 | $1710.22 | Radiator repair |
| 11. | July 15, 2014 | $701.25  | Repair of boom truck |
| 12. | July 25, 2014 | $3000    | Cash advance |
| 13. | July 26, 2014 | $696.97  | Repair manifold in truck |
| 14. | Aug. 4, 2014  | $4423.14 | Truck repairs |
| 15. | Oct. 3, 2014  | $763.55  | Brake repair on pickup truck |
| 16. | July 13, 2015 | $318.75  | Tires for pickup truck |
| 17. | July 16, 2015 | $2058.96 | Transmission repair to automobile |
| 18. | Aug. 7, 2015  | $300     | Repair manifold leak in pickup truck |
|     | TOTAL         | $48,518.66 | |

Those factual findings are substantiated by documentary and testimonial evidence in the record before us and, thus, are not clearly erroneous. See *Solairaj* v. *Mannarino Builders, Inc.*, 168 Conn. App. 1, 8–9, 143 A.3d 666 (2016). The defendant has not claimed otherwise in this appeal.

[3] The plaintiffs' complaint also contained counts alleging fraudulent misrepresentation and a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. In their posttrial brief, the plaintiffs acknowledged that those two counts "may be deemed abandoned or withdrawn," and the court thereafter did not permit the plaintiffs to recover on either basis.

[4] General Statutes § 52-550 (a) provides: "No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: (1) Upon any agreement to charge any executor or administrator, upon a special promise to answer damages out of his own property; (2) against any person upon any special promise to answer for the debt, default or miscarriage of another; (3) upon any agreement made upon consideration of marriage; (4) upon any agreement for the sale of real property or any interest in or concerning real property; (5) upon any agreement that is not to be performed within one year from the making thereof; or (6) upon any agreement for a loan in an amount which exceeds fifty thousand dollars."

[5] As the court noted following the close of the plaintiffs' case-in-chief, Richard had "just testified for three hours." The defendant nonetheless called Richard to testify for approximately two more hours as part of his defense.

[6] That promissory note was signed by the parties and states: "I, [the defendant] am purchasing a 1983 Ford F600 log truck with a grappler boom (log loader) from [Richard] for $8000 as a private sale on [October 7, 2013] as is, in good condition. The following payment agreement is as follows: [The defendant] agrees to pay Richard $350 a month until said balance is satisfied. Per their agreement, if at any time [the defendant] should default on any given monthly payment, then it is up to Richard's discretion, he can discuss an option to cure. This agreement is now agreed upon now [and] herein between [the defendant] and Richard. Should something happen to Richard, then his wife [Deborah] will assume the responsibility of any unpaid balance from that time on." The last page of that document contains a notation indicating that the plaintiffs had received an initial payment of $350 on October 7, 2013.

[7] For example, the court explained to the defendant that cross-examination was "not the time for you to get into an argument with [Richard] about the content of his testimony," and clarified that the defendant "can testify to the contrary" during his own case-in-chief. Later in the defendant's questioning of Richard, the court reminded the defendant that he was "again trying to testify" through his questions and stated that it would "welcome [the defendant's] testimony" as a witness and that the defendant would be permitted to "testify at length."

[8] Although the defendant couches his claim in terms of his constitutional right to due process, "we will review the trial court's refusal to grant a continuance for an abuse of discretion." *State* v. *Godbolt*, 161 Conn. App. 367, 374 n.4, 127 A.3d 1139 (2015), cert. denied, 320 Conn. 931, 134 A.3d 621 (2016).

[9] Richard had testified that the defendant made one payment of $350 on the promissory note admitted into evidence. In response, the defendant stated in relevant part: "I'm sorry. I would just like to object to that on behalf of the fact that I never made a payment on this agreement . . . ."

[10] The defendant renews that novel contention in this appeal, claiming that General Statutes § 52-178 "mandate[s] that a trial court must allow [the defendant] to take the vital testimony of the plaintiff [Deborah]" without a

subpoena. He is mistaken. By its plain language, § 52-178 provides that "[a] party to a civil action . . . [m]ay compel any adverse party . . . to testify as a witness in his behalf, *in the same manner and subject to the same rules as other witnesses* . . . ." (Emphasis added.) That statute thus places "the adverse party in the same position as any other witness." *Mendez* v. *Dorman*, 151 Conn. 193, 196, 195 A.2d 561 (1963). Accordingly, while the defendant retained the right to subpoena Deborah like any other witness, § 52-178 does not obviate the requirement that he do so to compel her testimony at trial. The defendant has not provided any legal authority indicating otherwise.

[11] At one point in the colloquy, the court asked the defendant if he had any knowledge that Deborah would offer any testimony that differed from that already provided by "her husband" earlier that day; the defendant conceded that he did not, stating that he was "not a mind reader . . . ."

[12] The record indicates that the defendant, on April 12, 2016, filed an application for the issuance of a subpoena by a self-represented party, regarding the testimony of Attorney Brian S. Mead. In addition, the defendant appended to his appellate reply brief copies of two applications for the issuance of a subpoena by a self-represented party that he had filed years earlier in an unrelated action. See *National Truck Emergency Road Service, Inc.* v. *Peloquin*, Superior Court, judicial district of Windham, Docket No. CV-09-5005618-S (July 6, 2011).

[13] Although our courts are solicitous of self-represented parties, such parties nevertheless are "bound by the same rules of evidence and procedure as those qualified to practice law." *Cersosimo* v. *Cersosimo*, 188 Conn. 385, 394, 449 A.2d 1026 (1982).

[14] In paragraph nine of their complaint, the plaintiffs alleged that the defendant "has refused to pay $61,357 that he promised to pay the plaintiffs . . . ." In their posttrial brief, the plaintiffs alleged that the credible evidence presented at trial entitled them to a judgment on the breach of contract count in the amount of $48,168.66.

[15] The plaintiffs, by contrast, attribute that difference to their acknowledgement that although Richard had testified that there were additional loans made to the defendant beyond the eighteen found by the court, either "no documentary evidence was available or . . . [Richard] could not recall sufficient information to corroborate" those additional loans at trial.

———————————————