******************************************

The "officially released" date that appears near the
beginning of an opinion is the date the opinion will be
published in the Connecticut Law Journal or the date it
is released as a slip opinion. The operative date for the
beginning of all time periods for the filing of postopin-
ion motions and petitions for certification is the "offi-
cially released" date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecti-
cut Law Journal and subsequently in the Connecticut
Reports or Connecticut Appellate Reports. In the event
of discrepancies between the advance release version of
an opinion and the version appearing in the Connecti-
cut Law Journal and subsequently in the Connecticut
Reports or Connecticut Appellate Reports, the latest
version is to be considered authoritative.

The syllabus and procedural history accompanying
an opinion that appear in the Connecticut Law Jour-
nal and subsequently in the Connecticut Reports or
Connecticut Appellate Reports are copyrighted by the
Secretary of the State, State of Connecticut, and may
not be reproduced or distributed without the express
written permission of the Commission on Official Legal
Publications, Judicial Branch, State of Connecticut.

******************************************

## PATRICIA K. BORDIERE *v.* PATRANI J. CHANDLER ET AL.
### (AC 48113)

Cradle, C. J., and Suarez and Pellegrino, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment for the defendant on her special defense of promissory estoppel in the plaintiff's mortgage foreclosure action. After the note had matured but there was still an outstanding balance due to the plaintiff, the plaintiff and the defendant entered into an oral agreement that the defendant would pay the outstanding property taxes that the plaintiff had failed to pay as required by the terms of the mortgage, and, in return, the plaintiff would release her from further payments on the outstanding debt and send her the deed to the property. The plaintiff claimed, inter alia, that the court erred in finding for the defendant on her special defense of promissory estoppel. *Held*:

The trial court did not err in finding that the plaintiff's action was barred by the doctrine of promissory estoppel, as the court was within its province to determine that the defendant's testimony regarding her agreement with the plaintiff was credible and persuasive and was corroborated by her payment of the delinquent taxes and by the testimony of an attorney for the city where the property was located.

This court declined to review the plaintiff's claim that her agreement with the defendant was unenforceable under the statute of frauds (§ 52-550 (a)) because it was not in writing, as the plaintiff failed to preserve that claim in the trial court.

Argued September 8—officially released November 11, 2025

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant, and for other relief, brought to the Superior Court in the judicial district of New Britain, and tried to the court, *Hon. Joseph M. Shortall*, judge trial referee; judgment for the named defendant, from which the plaintiff appealed to this court. *Affirmed*.

*Jon C. Leary*, for the appellant (plaintiff).

*Sarah Poriss*, for the appellee (named defendant).

*Opinion*

CRADLE, C. J. In this mortgage foreclosure action, the plaintiff, Patricia K. Bordiere, appeals from the judgment of the trial court rendered in favor of the defendant Patrani J. Chandler.[1] On appeal, the plaintiff claims that the court erred in (1) finding in favor of the defendant on her special defense of promissory estoppel and (2) not finding that the oral agreement on which the defendant relied in discontinuing her payments on the mortgage was unenforceable under the statute of frauds. We disagree and affirm the judgment of the trial court.[2]

The following facts, as set forth by the trial court, and procedural history are relevant to our resolution of the claims on appeal. "In 1996, the defendant . . . executed a note payable to the plaintiff . . . and her now deceased husband Marcus Bordiere[3] in the amount of $78,000. That note was secured by a mortgage on property [located] at 5 Cider Mill Court in New Britain [(property)], the property that is the subject of this foreclosure action. Monthly payments in the amount of $627.61 were to be made over a ten year period. If there was still a balance due as of February 1, 2006, [the defendant] was to make a 'balloon payment' of the entire balance due at that time. . . . Among the 'Uniform Covenants' in the mortgage securing that note was one that obligated the lenders, the Bordieres, to pay various 'Escrow Items,' including 'taxes and assessments.' . . .

---

[1] Although the city of New Britain also was named as a defendant in this action, it has not participated in this appeal. Any reference to the defendant in this decision therefore is to Patrani J. Chandler only.

[2] The plaintiff also challenges the trial court's conclusion that her action was barred by the doctrine of laches. Because we agree with the trial court's conclusion that the plaintiff's action was barred by promissory estoppel, we need not address the plaintiff's challenge to the trial court's application of the doctrine of laches.

[3] Marcus Bordiere died in 2013.

"[I]n 2006, when the note matured and there was a balance outstanding, Marcus Bordiere and [the defendant] agreed that [the defendant] could continue to make monthly payments on the debt, and she did so until 2015. . . .

"In 2015, [the defendant] learned that there were unpaid real estate taxes on the property due to the city of New Britain (city). She had a phone conversation with [the plaintiff] on the subject of the unpaid taxes. [The plaintiff] told [the defendant] that she wanted nothing to do with the payment of the taxes. . . . [The plaintiff] proposed that [the defendant] pay the taxes due, and in return, [the plaintiff] would release her from further payments on the outstanding debt and send her the deed to the property. Acting in reliance on that promise, [the defendant] agreed with the attorney representing the city, Albert Proulx, that she would pay off the unpaid taxes in installments over the next year. She did that. . . .[4]

"After the taxes were paid off in 2016, [the defendant] made no further payments on the note.[5] She had one

---

[4] It is undisputed that the defendant paid the delinquent taxes on the property.

[5] The trial court noted that the defendant "introduced into evidence a copy of the warranty deed from 1996, when she purchased the property, testifying that this was the deed sent to her by [the plaintiff] after [the defendant] had paid the outstanding taxes." The plaintiff argued at trial and continues to argue before this court that she did not send the deed to the defendant but that the deed had to have come from the city at the time the deed was recorded in 1996 and that the defendant had it all along. The court did not make an explicit finding as to how the defendant came into possession of the deed. On the basis of the trial court's decision as a whole, we can infer that, at the very least, the trial court rejected the plaintiff's argument that the defendant had the deed all along and misrepresented to the trial court that she received it after she paid the delinquent taxes in 2016. The lack of a specific finding with respect to the possession of the deed by the trial court reflects that it did not consider the question of how the defendant came to be in possession of the deed to be relevant to its decision that there was an oral agreement between the parties.

phone conversation with Michael Bordiere[6] about the unpaid taxes and no other contact with [the plaintiff] or anyone else on her behalf except for an unpleasant confrontation with Michael Bordiere at the . . . property that was resolved when the New Britain police advised [Michael] Bordiere that it was time for him to leave and that he should handle any dispute over the property in civil court."[7] (Citations omitted; footnotes added; footnote omitted.)

In March, 2022, the plaintiff commenced this action seeking to foreclose on the mortgage on the ground that the defendant had failed to pay the principal and interest due. The defendant left the plaintiff to her proof as to the allegation of nonpayment and asserted several special defenses. Relevant to this appeal, the defendant asserted that the plaintiff's action was barred by the doctrine of promissory estoppel in that she stopped making payments on the mortgage in reliance on the plaintiff's promise in 2015 that she would release her from doing so if she paid the delinquent taxes on the property.[8]

---

[6] Michael Bordiere is the son of the plaintiff and Marcus Bordiere.

[7] This incident occurred in October, 2022. The police report of the incident reflects that the police received a telephone call from an "anonymous neighbor" complaining that the defendant and another individual were on the property inside the residence but that it was supposed to be vacant. When the police arrived, the defendant answered the door and explained to the officer that she owned the property. At that time, Michael Bordiere and the "anonymous neighbor" approached, and told the officer that the defendant was "in foreclosure and they were the bank."

[8] The defendant first asserted five special defenses: payment, statute of limitations, accord and satisfaction, detrimental reliance and laches. In her reply, the plaintiff denied the defendant's special defenses. The defendant later amended her special defenses to include four additional defenses: breach of contract, unclean hands, equitable estoppel and promissory estoppel. In amending her special defenses, the defendant did not allege any new facts. Her special defenses, at all times, were based on her allegation that she stopped making payments on the mortgage due to the verbal agreement between her and the plaintiff that she would be excused from doing so if she paid the back taxes that were outstanding in 2015. The plaintiff did not file a reply to the amended special defenses.

On September 26, 2024, following a trial and the filing of posttrial briefs by the parties, the court, *Hon. Joseph M. Shortall*, judge trial referee, issued a memorandum of decision wherein it rendered judgment in favor of the defendant on her special defense of promissory estoppel.[9] This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff claims that the court erred in finding that her action was barred by the doctrine of promissory estoppel. She argues that the defendant "failed to establish [that] a clear and definite promise existed and that it was such a promise that would have been reasonable for the plaintiff to expect reliance on." We are not persuaded.

"[U]nder the doctrine of promissory estoppel, [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. . . . A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance. Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all. . . .

"Additionally, the promise must reflect a present intent to commit as distinguished from a mere statement of intent to contract in the future. . . . [A] mere expression of intention, hope, desire, or opinion, which shows no real commitment, cannot be expected to induce reliance . . . and, therefore, is not sufficiently promissory. The requirements of clarity and definite-

---

[9] See footnote 2 of this opinion.

ness are the determinative factors in deciding whether the statements are indeed expressions of commitment as opposed to expressions of intention, hope, desire or opinion. . . . Finally, whether a representation rises to the level of a promise is generally a question of fact, to be determined in light of the circumstances under which the representation was made." (Internal quotation marks omitted.) *T & M Building Co.* v. *Hastings*, 194 Conn. App. 532, 553–54, 221 A.3d 857 (2019), cert. denied, 334 Conn. 926, 224 A.3d 162 (2020).

Here, the court found: "Although she now denies it . . . [the plaintiff], faced with the problem of unpaid taxes on the property on which she held a mortgage and wanting nothing to do with the payment, made a clear and definite promise to [the defendant] that, if she solved that problem by paying those taxes, she would be relieved of the obligation to make further payments on the note and be given the deed to the property. [The defendant] relying on that promise, paid the taxes. . . . [I]njustice can be avoided only by enforcement of the promise made by [the plaintiff] in 2015. [The defendant] has met her burden of proving the defense of promissory estoppel." (Citation omitted; internal quotation marks omitted.)

The plaintiff argues that "[t]he defendant did not meet her burden of proof in establishing the existence of such an oral agreement and the trial court's finding of such was clear error." She contends that "[t]he only evidence that supported such a ruling was the self-serving, unsupported testimony of the defendant that the plaintiff promised to give [her] 'the deed' if [she] paid the delinquent real estate taxes owed on the subject real estate." It is well established that, "[i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . It is the privilege of the trial court to adopt whatever testimony it reasonably

believes to be credible, and it is not the function of this court to retry the facts or pass on the credibility of a witness." (Citations omitted; internal quotation marks omitted.) *Hallock* v. *Hallock*, 228 Conn. App. 81, 104, 324 A.3d 193 (2024). Although the plaintiff describes the defendant's testimony as self-serving, the court was within its province to determine, as reflected by its decision, that her testimony was credible and persuasive.

The court also found that the defendant's testimony was corroborated by Proulx' testimony and rejected the plaintiff's testimony to the contrary. The court explained: "[The plaintiff] denied that she had any such agreement with [the defendant]. Regrettably, the court finds that [the plaintiff's] testimony on this subject was unreliable, not from any intent on her part to deceive but because her memory has failed her on this subject. For example, she denied having any conversation with . . . Proulx or any other representative of the city about taxes due the city, both in her testimony and in her sworn responses to interrogatories. . . . Proulx, a respected member of the New Britain bar, testified, however, to his clear recollection of such a telephone conversation. In that conversation [the plaintiff] told him she wanted nothing to do with the payment of taxes on the property, which corroborates [the defendant's] testimony as to [the plaintiff's] statements to her on the same subject. [The plaintiff] rejected . . . Proulx' suggestion that she pay the taxes and add them on to the debt due from [the defendant]." The court further found that the defendant's testimony was corroborated by her payment of the delinquent taxes. The court noted that "[n]o evidence was introduced as to any further unpaid taxes, and the court must assume that [the defendant] has been paying them, an expense she would not have borne but for [the plaintiff's] promise that the property would be hers." We therefore disagree with the plaintiff's argument that the court's finding of the

existence of an oral agreement between the parties was erroneous.

The plaintiff further contends that any alleged agreement by her to forgive the amount due on the mortgage in exchange for the defendant's payment of the delinquent taxes would not objectively induce reliance because "the defendant was already obligated to pay her own real estate taxes." In so arguing, the plaintiff ignores the term of the mortgage note that provided that the defendant's monthly payment included a portion to be held in escrow by the Bordieres to pay the property taxes to the city when they became due. That arrangement continued pursuant to the verbal agreement between the defendant and Marcus Bordiere following the expiration of the term covered by the original note in 2006. When the defendant agreed in 2015 to pay the delinquent taxes, she effectively paid the property taxes two times. Of course, the defendant would not agree to do so without consideration. The plaintiff reasonably should have expected the defendant to rely on her promise to release the defendant from any further payments on the mortgage in exchange for requiring the defendant to pay the property taxes a second time. Accordingly, the plaintiff's claim that the court erred in finding that her action was barred by promissory estoppel must fail.

## II

The plaintiff also claims that, even if there was an oral agreement that provided for the plaintiff's forgiveness of the debt on the mortgage in consideration of the defendant's payment of the delinquent taxes, that agreement was unenforceable because it was not in writing as required under the statute of frauds. See General Statutes § 52-550 (a).[10] "Under Connecticut law,

[10] General Statutes § 52-550 (a) provides: "No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged: (1) Upon any agreement to charge any executor or administrator, upon a special promise to answer damages out of his own

the statute of frauds operates as a special defense to a civil action." (Internal quotation marks omitted.) *Konover Development Corp.* v. *Waterbury Omega, LLC*, 214 Conn. App. 648, 676, 281 A.3d 1221, cert. denied, 345 Conn. 919, 284 A.3d 627 (2022). Under our common law and rules of practice, special defenses must be affirmatively pleaded by a party. See *Silver Hill Hospital, Inc.* v. *Kessler*, 200 Conn. App. 742, 750, 240 A.3d 740 (2020); see also Practice Book § 10-50.

Here, the plaintiff is seeking to invoke the statute of frauds to defeat the defendant's special defense that she relied on a verbal agreement with the plaintiff in discontinuing her payments on the mortgage. If the plaintiff wanted to plead the statute of frauds, she should have done so in reply to that special defense, essentially stating that, even if there was such an agreement, the failure to comply with the statute of frauds would defeat the special defense. The plaintiff, however, did not do so. The plaintiff raised her statute of frauds claim for the first time during her closing argument to the court.[11] In her posttrial brief, the plaintiff raised the statute of frauds, but only as to the defendant's special defenses of payment and breach of contract, not as to the defendant's special defense of promissory estoppel. Because the plaintiff did not argue to the trial court that the defendant's special defense of promissory estoppel failed under the statute of frauds, she may not do so for the first time before this

property; (2) against any person upon any special promise to answer for the debt, default or miscarriage of another; (3) upon any agreement made upon consideration of marriage; (4) upon any agreement for the sale of real property or any interest in or concerning real property; (5) upon any agreement that is not to be performed within one year from the making thereof; or (6) upon any agreement for a loan in an amount which exceeds fifty thousand dollars."

[11] During closing argument, counsel for the plaintiff argued: "[O]ur statute of limitations requires that any agreement relating to land be in writing, and there's certainly nothing in writing relating to this alleged agreement to forgive the debt and give a release of mortgage." In response, counsel for the defendant argued that the statute of frauds did not apply because the parties performed their obligations under the agreement.

court. See *Graham* v. *Graham*, 222 Conn. App. 560, 580, 306 A.3d 499 (2023).

Moreover, the trial court did not address the plaintiff's statute of frauds argument, presumably because that argument was briefed only as to the special defenses of payment and breach of contract, not the special defenses on which the defendant prevailed. To the extent the plaintiff believed that her statute of frauds claim had been properly raised and that the court had failed to address it, the plaintiff could have, but failed, to seek an articulation from the court. It was the plaintiff's responsibility to do so. See Practice Book § 61-10 (a) (it is appellant's responsibility to provide adequate record for review). Because the plaintiff failed to preserve her statute of frauds claim, we decline to review that claim in this appeal. See *Lucky 13 Industries, LLC* v. *Commissioner of Motor Vehicles*, 210 Conn. App. 558, 566–67, 270 A.3d 188, cert. denied, 343 Conn. 905, 272 A.3d 1127 (2022).[12]

The judgment is affirmed.

In this opinion the other judges concurred.

_____

[12] We further note that the statute of frauds generally does not apply when a party demonstrates partial performance with contractual obligations. As this court has explained, "[t]he doctrine of part performance . . . is an exception to the statute of frauds. . . . This doctrine originated to prevent the statute of frauds from becoming an engine of fraud. . . . [T]he elements required for part performance are: (1) statements, acts or omissions that lead a party to act to his detriment in reliance on the contract; (2) knowledge or assent to the party's actions in reliance on the contract; and (3) acts that unmistakably point to the contract. . . . Under this test, two separate but related criteria are met that warrant precluding a party from asserting the statute of frauds. . . . First, part performance satisfies the evidentiary function of the statute of frauds by providing proof of the contract itself. . . . Second, the inducement of reliance on the oral agreement implicates the equitable principle underlying estoppel because repudiation of the contract by the other party would amount to the perpetration of a fraud." (Citation omitted; internal quotation marks omitted.) *Patrowicz* v. *Peloquin*, 190 Conn. App. 124, 138–39, 209 A.3d 1233, cert. denied, 333 Conn. 915, 216 A.3d 651 (2019). As noted herein, the defendant performed her obligation under the verbal agreement with the plaintiff when she paid the delinquent taxes on the property. It therefore is unlikely that the agreement at issue would be unenforceable under the statute of frauds.