EUGENE ADAMS *vs.* THE HERALD PUBLISHING COMPANY.

First Judicial District, Hartford, October Term, 1909.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, JS.

Authority, express or implied, is essential to enable an agent to bind his principal by contract.

The question of the existence of an apparent or implied agency is essentially one of fact, to be determined upon all the legitimate evidence in the case.

One who deals with a known agent is put upon inquiry as to the scope of his authority.

An agent in charge of the business office of a newspaper corporation has no implied or apparent authority, merely as such agent, to enter into advertising contracts of a peculiar and unusual nature, involving large expense, the insertion of reading notices, and frequent changes in the form of the advertisement; and in the absence of any evidence of prior dealings which might lay the foundation for an estoppel, or of a ratification of the agent's unauthorized act, the corporation is not bound by contracts of that character.

In this State there is no inflexible rule with respect to calling the attention of a witness on cross-examination to alleged contradictory statements made by him out of court, before questioning him upon that subject. The trial court is vested with a liberal judicial discretion as to how the inquiry should be conducted in any given case, and its ruling, if reviewable on appeal, will be set aside only where it is manifest that the discretion has been clearly abused.

Argued October 12th—decided December 17th, 1909.

ACTION for breach of contract, brought to and tried by the Court of Common Pleas in Hartford County, *Coats, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

The defendant is a corporation engaged in the publication of a newspaper and doing printing. One of its three directors having died, the business and affairs of the corporation were being managed by the two survivors. One, the president, devoted his attention particularly to the work of publication. The other was secretary and treasurer, and she was actively engaged in the conduct of the

Adams *v.* Herald Publishing Co.

finances of the corporation and in the management of its general business interests. A business office was maintained in the building where the paper was printed and issued. In this office the ordinary and routine business of the corporation was conducted by agents appointed by the directors and under their general direction and control. One Schmidt was employed as the head of this office. His duties consisted in ascertaining and carrying out the directions of the directors, except in routine matters concerning which there could be no reasonable doubt. On the morning upon which Schmidt first went to work, the plaintiff visited the office, inquired for the business manager, and by some one was referred to Schmidt. Plaintiff was then engaged in the business of making contracts with the publishers of newspapers, under which he employed solicitors of his own to procure contracts between the publishers and advertisers for the insertion in the newspapers of advertisements of a special kind and at a special rate. He proposed to Schmidt to enter into a contract with the defendant for the canvass of New Britain for four-line advertisements to be inserted every other day for one year in the business directory of defendant's paper, the advertiser to have the privilege of changing the matter at pleasure, and to have the benefit of a special ten-line reading notice coincident with the first insertion. The amount to be charged the advertiser was $21 a year, of which sum the plaintiff was to have forty per cent. He also submitted a form of contract to be entered into by the advertisers, and one embodying the terms of his proposal to be signed by the defendant. Schmidt expressed a desire to think over the matter and to consult others, and the plaintiff left, leaving the forms of contract with him. Schmidt later accepted the proposition, and signed the contract in the name of the defendant, by himself as business manager. The business which the plaintiff thus undertook to transact with Schmidt was not of an ordinary

or customary kind, but was peculiar, special, and unusual, and involved the employment of an unusual agency, large expense, compensation less than ordinary, and an unusual form of advertisement subject to frequent changes. Schmidt in fact did not consult with either of the directors or officers in relation thereto, had no authority to enter into such a contract on behalf of the defendant, and it was not within the apparent scope of his authority to do so. He was authorized to solicit and receive advertisements of the usual and customary kind and form, and at usual and established rates, and so did; but as far as appeared he had never done otherwise, nor attempted to vary from the customary form or rates, except in the present instance.

Following the execution by Schmidt of the contract, the plaintiff caused a canvass to be made, and procured the signatures of forty-six responsible proposed advertisers to contracts such as were provided for in the writing signed by Schmidt, and delivered them to Schmidt, who receipted therefor in the name of the defendant by himself, business manager, and placed them in his desk, where they remained until his discharge after seven weeks' service.

Neither of the officers and directors had any knowledge of the plaintiff's negotiations or contract with Schmidt, that the plaintiff was making his canvass, or that the advertisers' contracts obtained by him had been obtained or were in existence, until after they were all secured and in Schmidt's hands, and none of the proposed advertisements were ever published, and no benefit therefrom ever accrued to the defendant, who repudiated the contract entered into by Schmidt, when its existence became known to it, and refused to pay the plaintiff thereunder.

The other pertinent facts are stated in the opinion.

*Charles S. Hamilton* and *James Roche*, for the appellant (plaintiff).

*Bernard F. Gaffney,* for the appellee (defendant).

PRENTICE, J. The plaintiff seeks to enforce against the defendant the terms of a written contract which was not otherwise executed on the latter's behalf than by one who at the time of its execution was known to the plaintiff to be an agent. In thus dealing with this agent the plaintiff was put upon inquiry as to the scope of his authority; and the defendant will not be obligated as principal unless the agent in the execution of the contract was acting within the scope of the authority expressly or impliedly conferred upon him by the defendant, or unless the latter is estopped from denying that the agent was so acting, or there has been a subsequent ratification of the agent's act. *Credit Co.* v. *Howe Machine Co.,* 54 Conn. 357, 389, 8 Atl. 472.

The agent's express authority did not extend to the execution of the contract. It is also found that his implied authority did not. The question of the existence of an apparent or implied agency is essentially one of fact. *Union Trust Co.* v. *McKeon,* 76 Conn. 508, 514, 57 Atl. 109. As such it is reviewable to the limited extent that other questions of fact are. But a review in the present case discloses no error in the court's conclusion. The only fact from which an inference of authority could be drawn is that Schmidt was at the head of the defendant's business office. Under the circumstances outlined in the finding the court was justified in not regarding it sufficient to establish an apparent agency for the execution of a contract of the character of that in controversy. *Union Trust Co.* v. *McKeon,* 76 Conn. 508, 513, 57 Atl. 109. There being no apparent agency arising from the situation just noticed, there could be no estoppel, since there is no other fact to aid in the creation of it. There had been no prior course of dealing by or through Schmidt to justify a belief upon anybody's part that his authority extended beyond its actual limits. His employment had but just begun,

and as far as appears his interview with the plaintiff was his first business act in that employment. The plaintiff chose to deal with him for the simple reason that he found him installed in the office, and he dealt with him without inquiry as to his authority or knowledge of other facts indicative of authority. *City Bank* v. *Thorp*, 78 Conn. 211, 217, 61 Atl. 428. There is nothing upon which to found a ratification.

The plaintiff offered evidence in chief tending to show that Schmidt submitted the contract to the two officers of the corporation, who were also its only directors, before it was executed, and that it was approved by them. This the two persons concerned denied. Upon rebuttal a witness was called for the purpose of contradicting one of these directors—the president, one Cochran. This witness was asked concerning a conversation which he testified he had with Cochran within a few days after the contract was entered into, for the purpose of showing, as claimed, that Cochran then informed the witness about it. Counsel for the defendant objected to the inquiry, upon the ground that Cochran's attention had not been called to the claimed conversation, and that the proper course, as outlined in the 22d Conn., had not been pursued; and the inquiry was not permitted.

The case to which counsel thus appealed for the exclusion of the proffered testimony was that of *Hedge* v. *Clapp*, 22 Conn. 262, wherein the question of the power and duty of a court in dealing with a situation like that before the court in the present case was fully discussed and clearly defined. In that case it was contended that it was reversible error to receive evidence of the declarations of a witness, made out of court, contradictory of his statements sworn to on the trial, without requiring that the attention of the witness should have been first called upon cross-examination to the claimed contradictory declarations. Such is the unbending rule of law in many, if not most,

jurisdictions to-day. 2 Wigm. on Ev. § 1028. This court, however, refused to join in the procession of those who have created, out of the decision of the judges in *The Queen's Case*, 2 B. & B. 313, any such inflexible principle. But while this is true, it gave no encouragement to a general practice on the part of the courts of admitting such contradictory declarations quite regardless of whether or not the attention of the witness sought to be contradicted had been first directed to them. Much less did that authority hold or suggest that the refusal to hear such contradictory testimony under any and all circumstances would be reversible error. The conclusion of the court was that there was no inflexible rule to govern the conduct of a trial court under the conditions suggested, that the practice sought to be established as an unyielding rule by the plaintiff in error was a safe and conservative one to pursue in many, if not most, cases, and one very proper to be adhered to in such cases, but that it was one from which a court, in the exercise of that discretion with which it is liberally endowed, might well and properly depart, if, with the circumstances before it, it was of the opinion that the ends of fairness and justice would thereby be best subserved. The principles of this leading case have been strictly adhered to in this jurisdiction, and they embody familiar law. *McGinnis* v. *Grant*, 42 Conn. 77, 79; *Tomlinson* v. *Derby*, 43 id. 562, 565; *Bradley* v. *Gorham*, 77 id. 211, 213, 58 Atl. 698. It is clear, therefore, that the ruling of the court was not one which deprived the plaintiff of any right, and that it was one which lay within the domain of the judicial discretion. That it was made in the exercise of that discretion we must assume, since nothing to indicate the contrary appears. This assumption, however, is by no means a barren one, in view of the fact that the appeal of counsel was to a long-established and familiar principle, and to the doctrine of a particular case expressing that principle, distinctly called to the attention of the court.

We have said that error cannot be predicated upon a ruling made in the exercise of this discretion. *McGinnis* v. *Grant*, 42 Conn. 77, 79; *Tomlinson* v. *Derby*, 43 id. 562, 565. If, however, it be assumed that a case might arise which disclosed such a clear abuse of discretion as to warrant a review, this clearly is not such a case. The record contains no information as to the situation before the court except such as is contained in the bare recital of the ruling already outlined.

Defendant's counsel have undertaken to justify the ruling upon the further ground that the evidence sought to be elicited was not properly rebuttal, but relevant to the plaintiff's case in chief. It would be unfair, as it is unnecessary, to sustain the court's action upon this ground, since it was not made a ground of objection, and is not stated as a reason for the ruling, and the power of the court was no more and no less a discretionary one in this aspect of the situation than in that already discussed. *Hathaway* v. *Hemingway*, 20 Conn. 191, 196.

There is no error.

In this opinion the other judges concurred.