STATE OF CONNECTICUT *v.* JOHN J. GAUTHIER
(AC 33471)

DiPentima, C. J., and Beach and Sullivan, Js.

Argued October 15, 2012—officially released January 1, 2013

*Daniel J. Krisch*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue,* assistant state's attorney, with whom, on the brief, were *Brian W. Preleski,* state's attorney, and *John H. Malone,* senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, John J. Gauthier, appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (1). The defendant claims that the court's denial of his request for a continuance violated his constitutional right to present a defense. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to this appeal. In the early morning hours of September 20, 2008, Kevin Haythe and the victim were drinking with a mutual friend in the friend's New Britain apartment. When an argument developed between the mutual friend and Haythe, the victim accompanied Haythe outside the apartment. While outside, Haythe continued to argue with the mutual friend, who remained on a second floor porch. The defendant, his girlfriend and others, meanwhile, were standing in the yard of a neighboring house. Apparently believing that the victim was the one arguing with the friend rather than Haythe, the defendant yelled at the victim to "calm down." He added: "[D]on't think I don't know what you did . . . if I see you around here after tomorrow I'll shoot you in the face."[1] The victim walked away and went into the backyard. As the victim stood in the backyard sending a text message, the defendant approached the victim and "sucker punched" him on the left side of his face. The victim fell to his knees and the defendant "jumped on [the victim's] back." The defendant "dug" his fingers

---

[1] The victim testified that he had been arrested for raping the defendant's girlfriend and pleaded guilty to unlawful restraint in that case.

into the victim's eye sockets and "tried to pull [his eyes] out." The victim screamed "[Haythe], please get him off me, get him off me, he's digging my eyes out, he's digging my eyes out." Haythe "tapped" the defendant and said, "it's enough . . . get off him," and the defendant stopped.[2] The victim was treated for his injuries. As a result of this incident, the victim's right eye was "severely deviated outward" and will "never come back" to its proper position in the eye socket. He suffered a complete loss of vision in his right eye. The defendant was arrested and charged pursuant to a second substitute information with assault in the first degree in violation of General Statutes § 53a-59 (a) (2).[3]

On October 28, 2010, the second day of trial, the defendant requested to have his special public defender, Raul Davila, dismissed and to have new counsel appointed or, in the alternative, to represent himself. After a lengthy hearing, the court denied the defendant's request. On November 1, 2010, the defendant again requested to represent himself. After canvassing the defendant, the court granted his request to represent himself and appointed Davila as standby counsel. Later that day, the state rested and the defendant called one witness to the stand.

On November 2, 2010, the defendant requested a continuance in order to call Davila's investigator, Donald Light, as a witness. The defendant said he wanted Light to testify about statements allegedly made to him by two of the state's witnesses, Eldridge Evans, who lived on the first floor of the New Britain apartment building where Haythe and the victim had been visiting on September 20, 2008, and Haythe. Light had included in

---

[2] Several witnesses testified about the melee.

[3] The defendant was also charged with having committed an offense while on release in violation of General Statutes § 53a-40b and with being a persistent serious felony offender pursuant to General Statutes § 53a-40 (j). He pleaded guilty to both charges.

his report to Davila references to Haythe's statements. Haythe and Evans both testified as to the events of that night during the state's case. The court conducted a probing inquiry; both sides relied on Light's report for the substance of Light's proposed testimony regarding Haythe's statements. The defendant orally represented to the court the content of Evans' statement to Light.

The defendant informed the court that aside from Light, he had no additional witnesses. Davila represented that Light was unavailable that morning, that he "might" be available that afternoon, but he was "99.9 percent assured" that Light would be available the next day. The defendant represented that Light would testify that (1) Evans told Light that he denied any knowledge of the incident at issue because he "was probably drunk," which testimony the defendant claimed contradicted Evans' testimony describing the events of the night at issue, (2) Haythe told him "that there had been harsh words exchanged between the defendant and the victim which provoked the fight," which statement, the defendant argued, was contrary to Haythe's testimony that there were no words exchanged, (3) Haythe told Light that he saw the defendant "hit" the victim, which, the defendant argued, was contrary to Haythe's testimony, because the movement involved in hitting someone is "totally different" from the movement involved in eye-gouging, (4) Haythe admitted to Light to being under the influence of alcohol "and/or drugs" at the time of the incident, which statement, the defendant suggested, was contrary to Haythe's testimony that he had consumed alcohol and was unaware of any drug use and (5) Haythe's description to Light of the location of the fight was inconsistent with Haythe's testimony.

The court denied the defendant's request for a continuance. The court reasoned that, to the extent that there were inconsistencies between statements to Light and in-court testimony, neither Davila, who cross-examined

Haythe, nor the defendant, who cross-examined Evans, had asked these witnesses about any such inconsistencies. The court further determined that none of Light's proposed testimony was either admissible or material. The defendant rested his case. The jury found him guilty of assault in the second degree. Judgment entered and this appeal followed.

Our Supreme Court has set forth the following legal principles regarding review of a denial of a continuance: "The determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. . . . In addition, we consistently have acknowledged that [o]ur role as an appellate court is not to substitute our judgment for that of a trial court that has chosen one of many reasonable alternatives. . . .

"We have articulated a number of factors that appropriately may enter into an appellate court's review of a trial court's exercise of its discretion in denying a motion for a continuance. Although resistant to precise cataloguing, such factors revolve around the circumstances before the trial court at the time it rendered its decision, including: the timeliness of the request for continuance; the likely length of the delay; the age and complexity of the case; the granting of other continuances in the past; the impact of delay on the litigants,

witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request; [and] the defendant's personal responsibility for the timing of the request . . . .

"In the event that the trial court acted unreasonably in denying a continuance, the reviewing court must also engage in harmless error analysis. . . . In connection with this inquiry into harmless error, [w]e distinguish between two types of cases: those in which a constitutional right has been implicated by a denial of a continuance, and those of a nonconstitutional nature. . . . Although prejudice is presumed in instances in which a defendant has suffered a deprivation of a constitutional right, in order to establish reversible error in nonconstitutional claims, the defendant must prove both an abuse of discretion and harm . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Coney*, 266 Conn. 787, 801–802, 835 A.2d 977 (2003).

The court denied the motion for a continuance in this case primarily on the ground that Light's proffered testimony was inadmissible. Although admissibility was not expressly mentioned in *Coney*, it is certainly a major factor, in these circumstances, in considering the legitimacy of the request.[4] See *Day* v. *Commissioner of Correction*, 118 Conn. App. 130, 135 n.4, 983 A.2d 869 (2009) (court need not consider all *Coney* factors in ruling on motion for continuance), cert. denied, 294 Conn. 930,

---

[4] The defendant argues that the denial of his request for a continuance impinged on his constitutional right to present a defense. "The right to present a defense, and its concomitant right to compulsory process, [however] are not unqualified . . . ." (Internal quotation marks omitted.) *State* v. *Estrella*, 277 Conn. 458, 487, 893 A.2d 348 (2006). "[T]he constitution does not require that a defendant be permitted to present every piece of evidence he wishes." (Internal quotation marks omitted.) *State* v. *Andrews*, 102 Conn. App. 819, 827, 927 A.2d 358, cert. denied, 284 Conn. 911, 931 A.2d 932 (2007). "[A] defendant is . . . bound by the rules of evidence in presenting a defense." (Internal quotation marks omitted.) *State* v. *Davis*, 298 Conn. 1, 9, 1 A.3d 76 (2010).

986 A.2d 1055 (2010). Because the court did not abuse its discretion in ruling that Light's proffered testimony was inadmissible, especially in view of the fact that the request for a continuance was made during trial,[5] the defendant cannot meet his burden of showing that the court's denial of the continuance was arbitrary and an abuse of discretion.

Section 6-10 of the Connecticut Code of Evidence, which is at issue in this case, provides in relevant part: "(c) . . . If a prior inconsistent statement made by a witness is not shown to or if the contents of the statement are not disclosed to the witness at the time the witness testifies, extrinsic evidence of the statement is inadmissible, except in the discretion of the court." "Where a party seeks to impeach a witness by using extrinsic evidence, certain standards must be met. The inconsistent statement must be relevant and of such a kind as would affect the witness' credibility, and, generally, a foundation for introducing the statement should be laid at the time of cross-examination of the witness. . . . In this state, we have no inflexible rule regarding the necessity of calling the attention of a witness on cross-examination to his alleged prior inconsistent statements before either questioning him on the subject or introducing extrinsic evidence tending to impeach him. From early times, it has consistently been held that it rests within the judicial discretion of the trial court whether to admit the impeaching statements where no foundation has been laid. . . . The trial court is vested with a liberal discretion as to how the inquiry should be conducted in any given case. . . . [U]sually, [however] the foundation for introducing a prior inconsistent statement is laid by asking the witness on cross-examination whether he made the statement and alerting him to the time and place at which it was made. . . .

[5] It is not apparent from the record whether other facts, such as impending juror unavailability, played any role. In the absence of an indication, we assume there was no special need to proceed expeditiously. Any delay, of

Where the witness denies having made the statement or is unable to recall having done so, extrinsic evidence may be admitted to show it was made." (Citations omitted; internal quotation marks omitted.) *State* v. *Ward*, 83 Conn. App. 377, 393, 849 A.2d 860, cert. denied, 271 Conn. 902, 859 A.2d 566 (2004).

First, the defendant argues that the court abused its discretion in determining that Light's proffered testimony that Evans denied any knowledge of the incident at issue because he "was probably drunk," was inadmissible. The defendant claims that the suggested testimony that Evans was probably drunk was not inconsistent with his testimony[6] that described the events on the night at issue, but rather cast doubt on Evans' credibility.[7] We are not persuaded. The purpose of a prior inconsistent statement, of course, is to cast doubt on credibility. If the statement were offered for the purpose of proving Evans *was* drunk and thus less credible, the statement obviously would be inadmissible hearsay. In its ruling, the court treated this statement as a prior inconsistent statement.[8]

"Whether there are inconsistencies between the two statements is properly a matter for the trial court. . . . Inconsistencies may be shown not only by contradictory statements but also by omissions. . . . [I]nconsistencies may be found in changes in position and they

course, is a contraindication in the decision whether to grant a continuance, to some degree.

[6] Evans testified that he had been drinking, but stated that although it was dark he thought he saw the defendant punch the victim, thereby causing the victim to fall to the ground, and then saw the two "scuffling . . . on the ground."

[7] Perhaps parenthetically, the only function of prior inconsistent statements is to affect credibility.

[8] In its ruling, the court specifically mentioned statements in Light's proffered testimony which it thought were consistent with either Evans' or Haythe's in-court testimony and treated the remaining statements as inadmissible prior inconsistent statements under § 6-10 (c) of the Connecticut Code of Evidence.

may also be found in denial of recollection. . . . The trial court has considerable discretion to determine whether evasive answers are inconsistent with prior statements." (Citations omitted.) *State* v. *Whelan*, 200 Conn. 743, 748–49 n.4, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). The court did not abuse its discretion in treating the offer as an inconsistent statement and, as a result, in exercising its discretion not to admit the statement because a proper foundation had not been laid. If it was not inconsistent, it was hearsay.

Second, the defendant argues that the court abused its discretion in determining that Light's proffered testimony that Haythe saw the defendant "hit" the victim was inadmissible. He contends that this statement was not inconsistent with Haythe's testimony, but rather was a statement that tended to discredit Haythe's testimony and could have led the jury to infer that the defendant punched the victim but did not try to gouge his eyes out. Again, if it was not a prior inconsistent statement offered to contest credibility, it was inadmissible hearsay. The court ruled that Light's proffered testimony in this regard was not necessarily inconsistent with Haythe's trial testimony, but in the event it was, it was inadmissible because the defendant did not lay a proper foundation under § 6-10 (c) of the Connecticut Code of Evidence.

Haythe testified during the state's case that while the victim was on the ground with the defendant on top of him, the defendant punched the victim, but he did not see any eye-gouging because he was "behind" the defendant. The court did not abuse its discretion in determining that Haythe's statement was not inconsistent with trial testimony and thus inadmissible. See *State* v. *Hines*, 243 Conn. 796, 803, 709 A.2d 522 (1998) ("[p]rior consistent statements of a witness are generally regarded as hearsay and are not admissible at trial,

either for their truth or for the purpose of rehabilitating a witness' damaged credibility" [internal quotation marks omitted]); see also Conn. Code Evid. § 6-11 (a).[9]

The defendant further argues that the "court should have exercised its discretion to allow Light's testimony about Haythe's other, inconsistent statements." He contends that although generally a witness is first questioned about a prior inconsistent statement prior to the introduction of extrinsic evidence of the prior inconsistent statement, the court should have exercised its discretion to admit the statements under § 6-10 (c) of the Connecticut Code of Evidence and the failure to do so unfairly penalized the defendant for Davila's failure to confront Haythe with prior inconsistent statements.

Our rules of evidence provide that "[i]f a prior inconsistent statement made by a witness is shown to or if the contents of the statement are disclosed to the witness at the time the witness testifies, and if the witness admits to making the statement, extrinsic evidence of the statement is inadmissible, *except in the discretion of the court.* If a prior inconsistent statement made by a witness is not shown to or if the contents of the statement are not disclosed to the witness at the time the witness testifies, extrinsic evidence of the statement is inadmissible, *except in the discretion of the court.*" (Emphasis added.) Conn. Code Evid. § 6-10 (c). "[W]e have no inflexible rule regarding the necessity of calling the attention of a witness on cross-examination to his alleged prior inconsistent statements before either questioning him on the subject or introducing extrinsic evidence tending to impeach him." *State* v. *Saia*, 172 Conn. 37, 46, 372 A.2d 144 (1976). "In determining whether there has been an abuse of discretion, every

---

[9] This rule is not absolute. See *State* v. *Hines*, supra, 243 Conn. 804. None of the exceptions listed in § 6-11 (b) of the Connecticut Code of Evidence, however, apply in this case.

reasonable presumption should be given in favor of the trial court's rulings on evidentiary matters." (Internal quotation marks omitted.) *State* v. *Hall*, 66 Conn. App. 740, 757–58, 786 A.2d 466 (2001), cert. denied, 259 Conn. 906, 789 A.2d 996 (2002).

Courts have wide discretion whether to admit prior inconsistent statements that have not satisfied the typical foundational requirements in § 6-10 (c) of the Connecticut Code of Evidence; see *State* v. *Daniels*, 83 Conn. App. 210, 215, 848 A.2d 1235, cert. denied, 270 Conn. 913, 853 A.2d 528 (2004); and we cannot say that the court abused its wide discretion in ruling these statements inadmissible. The court noted that Davila had an opportunity to cross-examine Haythe regarding the statements and cross-examined him on only one.[10] The court stated that Davila's decision not to cross-examine Haythe regarding the rest of Light's proffered statements was a matter of trial strategy and determined that to the extent that Haythe was not confronted with prior inconsistent statements[11] made to Light, the extrinsic evidence was not admissible. We cannot say that the court abused its discretion.

Further, a review of Light's report shows that although some of the details in Haythe's statements

---

[10] Davila confronted Haythe regarding his statement to Light that there had been "harsh words" between the defendant and the victim and Haythe admitted that he could have said it. Thus, this proffered testimony would fall within the ambit of the first sentence of § 6-10 (c) of the Connecticut Code of Evidence.

[11] With respect to Light's proffered testimony regarding Haythe's description to him of the location of the fight, the court stated that "I'm not sure that there's really any inconsistency" between Light's proffered testimony and Haythe's in-court testimony in that regard. To the extent that there was no inconsistency; see *State* v. *Whelan*, supra, 200 Conn. 748 n.4 ("[w]hether there are inconsistencies between the two statements is properly a matter for the trial court"); it was not an abuse of discretion to deem a consistent statement inadmissible. See *State* v. *Hines*, supra, 243 Conn. 803–804; see also Conn. Code Evid. § 6-11 (a).

might have been slightly different from his trial testimony, the overall import of the "new" statements would have been minimal or nonexistent. The same can be said for the defendant's representation of Light's proposed testimony regarding Evans' statement. The court did not abuse its discretion in denying the request of even a relatively short continuance, where there was no abuse of discretion in the court's preemptive evidentiary rulings and where the evidence sought to be admitted in any event would quite assuredly have made no difference in the outcome.

The judgment is affirmed.

In this opinion the other judges concurred.