******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## STATE OF CONNECTICUT *v.* JEVIN BURNS
## (AC 47432)

Elgo, Seeley and Bishop, Js.

*Syllabus*

Convicted of attempt to commit murder, assault in the first degree and carrying a pistol without a permit in connection with the shooting of the victim, the defendant appealed. He claimed, inter alia, that the trial court abused its discretion by permitting the state to impeach a witness, L, through the testimony of a police detective, D, on a collateral matter regarding L's purported inconsistent statements to D about her contact with the defendant following the shooting. *Held*:

This court declined to review the defendant's claim that L's testimony about her contact with the defendant following the shooting was not inconsistent with her statements to D, as the defendant failed to raise that claim before the trial court, and, therefore, it was not properly preserved.

The trial court did not abuse its discretion in determining that D's testimony concerning L's prior inconsistent statements did not involve a collateral matter, as those statements tended to establish L's bias toward the defendant.

The trial court did not abuse its broad discretion under the Connecticut Code of Evidence (§ 6-10 (c)) in admitting for impeachment purposes D's testimony concerning L's prior inconsistent statements even though L had not been confronted specifically regarding those statements at the time she testified.

Argued October 21, 2025—officially released March 24, 2026

*Procedural History*

Substitute information charging the defendant with the crimes of attempt to commit murder, assault in the first degree and carrying a pistol without a permit, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Gold, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed*.

*James E. Mortimer*, assistant public defender, for the appellant (defendant).

*Madeline Paine*, deputy assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *David Zagaja*, former supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SEELEY, J. The defendant, Jevin Burns, appeals from the judgment of conviction, rendered following a jury trial, of attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a, assault in the first degree in violation of General Statutes § 53a-59 (a) (1), and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). On appeal, the defendant claims that the trial court abused its discretion by permitting the state to impeach a witness on a collateral matter regarding purported inconsistent statements of the witness and that the admission of the improper impeachment evidence was harmful, thereby warranting a new trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the morning of April 30, 2018, Sicca Lee was at a laundromat when Tanea Mills, a cousin of the victim, Byron Carter, approached her and challenged her to a fight. Lee is a former girlfriend of the victim and of the defendant, with whom she has a child. Lee told Mills that they would fight after she finished her laundry. Mills subsequently returned to her apartment on Westland Street in Hartford, where she resided with, among others, her mother, Angela Carter, and the victim. Only Angela Carter was home at the time. Shortly after Mills returned to her apartment, Mills and Angela Carter heard a loud bang on a ground level window of the apartment that faces Westland Street. Both Angela Carter and Mills went to the window, where Lee was standing outside with Lakesha Burns, the defendant's mother; Karima Burns, the defendant's aunt and a foster mother to Lee; and another aunt of the defendant. Angela Carter also saw a crowd of people forming outside. Lee was there to follow up on Mills' earlier challenge to fight. While they conversed and argued with each other through the open window, several more cars arrived outside of the apartment. The defendant was a passenger in one of those vehicles.

The defendant exited the vehicle and stood on the sidewalk in front of the building where Mills and Lee were arguing through the window. Mills and Angela Carter noticed that the defendant was holding a gun in his hand while he stood on the sidewalk. Thereafter, the victim returned home from work and stopped his vehicle in the street. When he exited the vehicle, he was surrounded by the group of people who had gathered in the street. Thereafter, gunshots were fired, and everyone in the crowd fled. Mills and Angela Carter witnessed the shooting from the window of their apartment.[1]

Several officers with the Hartford Police Department (department) were dispatched to the scene shortly after the shooting following a report of a serious assault with a firearm. Upon arrival, the officers discovered the victim lying in the roadway receiving medical attention from Hartford firefighters. Mills and Angela Carter informed the responding officers that they had witnessed the defendant shoot the victim multiple times before fleeing in a white Chevrolet sedan with a New Jersey license plate. Officers were then redirected to search for the defendant and the vehicle at his mother's residence on Enfield Street in Hartford. Upon arrival at the Enfield Street residence, the police discovered a white Chevrolet vehicle matching the description provided parked in the driveway. The police also searched the premises for the defendant but did not find him. The white Chevrolet was removed and brought to a nearby evidence garage bay at the department. Officers searched the vehicle the following day; however, nothing of evidentiary value was found, and the vehicle was returned to Lakesha Burns at some point after April 30, 2018, but before the issuance of an arrest warrant for the defendant on May 2, 2018.

At the hospital where the victim was treated, physicians determined that he had been shot in the chest and side, where a bullet pierced his lung, and that his head had been grazed by a bullet. When one of the bullets

---

[1] On the day of the shooting, Lee, Karima Burns, Angela Carter, Mills, and Lakesha Burns provided written statements to the police.

broke apart, it severed his spinal column. As a result, the victim suffers from permanent paralysis. At trial, the victim was unable to recall details of the shooting or to identify his assailant.

A warrant for the defendant's arrest in connection with the shooting of the victim was issued on May 2, 2018. The defendant was arrested on December 5, 2018, and charged with attempt to commit murder, assault in the first degree, and carrying a pistol without a permit. The defendant elected to be tried by a jury, and the trial took place on various days between August 25 and 30, 2021.

In the state's case-in-chief, the prosecutor presented testimony from fifteen witnesses, including six law enforcement personnel from the department: Officer Daniel Freeman, Sergeant Valdemar Duarte, Lieutenant Martin Cunningham, Detective Craig O'Brien, Sergeant Anthony Rykowski, and Detective Dennis DeMatteo. The prosecutor also presented testimony from the victim; a social worker, Lori Annear; and five other witnesses: Mills, Angela Carter, Karima Burns, Lee, and Lakesha Burns. Mills testified that she saw a man hit the ground after hearing the gunshots and realized it was her cousin, the victim, from the color of his sneakers. According to Mills, the defendant walked up to the victim while he was on the ground and shot him three more times in his back. She saw that it was the defendant because, when the defendant turned around to go back to his car, he was facing her and her mother at the window. She described the sound as "boom, boom, boom," and saw flashes from the gun when it was fired. Mills spoke with the police at the scene and told them what she saw and that the defendant was the shooter, and she provided a written statement as well. Angela Carter similarly testified that she heard the gun go off, saw the victim collapse, and recognized the victim's orange sneakers. She also provided a written statement to the police regarding what she had witnessed.

On the morning of August 27, 2021, the prosecutor called Lakesha Burns to testify and questioned her about

her recollection of the April 30, 2018 shooting, as well as her interactions and communication with the defendant following the shooting. Specifically, on direct examination, Lakesha Burns testified that she had provided the police with the defendant's phone number, that she had made phone contact with the defendant using that phone number in the days after the shooting, and that the defendant returned to her apartment a couple of days after the shooting, at which time she had conversations with him about what had happened. Lakesha Burns also testified that she did not recall having contact with detectives after the day of the shooting or being asked, when she picked up her car, if she had seen the defendant. When asked if she recalled having a request made of her by detectives at that time as to where the defendant was located, she replied, "[n]o." On cross-examination, defense counsel did not question Lakesha Burns about her communications with the defendant after the shooting, the defendant's phone number, or her conversations with detectives.

After the prosecutor concluded his redirect examination of Lakesha Burns, he called his next witness, DeMatteo. The prosecutor first elicited testimony regarding DeMatteo's responsibilities with the department and his role as lead investigator assigned to investigate the shooting, including the process by which DeMatteo had obtained the witness statements from Lee and Lakesha Burns, both of which were admitted into evidence and read to the jury. Subsequently, the court excused the jury to hear the prosecutor's proffer of consciousness of guilt evidence.

Specifically, the prosecutor elicited testimony from DeMatteo regarding his attempts to contact the defendant after the shooting. DeMatteo testified that, in the three day period after the shooting, he tried to contact the defendant by way of the phone number provided by Lakesha Burns but that, when he called the number, the call was immediately disconnected, and he was not able to reach the defendant. He testified further that, "[e]ven

[Lakesha] Burns had indicated that the phone wasn't working anymore and she wasn't able to have contact with him." He also testified that, prior to the day of the release of the vehicle to Lakesha Burns, he spoke with her and indicated that he needed to talk to the defendant but had no success in meeting with the defendant, and that Lakesha Burns told him that she had not had any contact with the defendant. He also explained that, after the issuance of the arrest warrant for the defendant on May 2, 2018, he made no further attempts to contact the defendant to speak with him.

In addition to proffering the testimony as consciousness of guilt evidence, the prosecutor also explained to the court that he sought to offer DeMatteo's testimony about what Lakesha Burns had said to DeMatteo as impeachment evidence. In particular, the prosecutor sought to impeach Lakesha Burns' testimony on two grounds: **(1)** DeMatteo's testimony indicating that Lakesha Burns told him during each of his visits with her prior to the issuance of the arrest warrant that she had no contact with the defendant directly contradicted her testimony that she had a conversation with the defendant the day following the shooting, and **(2)** DeMatteo's testimony about Lakesha Burns' statement to him that she was not able to contact the defendant by the phone number that she had provided to DeMatteo contradicted her testimony that she had spoken with the defendant via that phone number.

Defense counsel objected to the proffered testimony on the ground that any alleged statements made by Lakesha Burns constituted hearsay and because the proffered testimony was overly prejudicial and did not evince a consciousness of guilt by the defendant, as there was no indication that the defendant was aware that the police had been trying to contact him prior to the issuance of the arrest warrant and everyone in the crowd had fled the scene following the shooting, not just the defendant. Following this argument, the court agreed that, because everyone had fled, it would be unfair for

the state to argue that the defendant's flight evinced a consciousness of guilt.

The court, nevertheless, took a brief recess. After it returned but prior to making its ruling, the court asked defense counsel if he wanted to make any comments for the record, to which defense counsel replied that the proffered testimony about the statements of Lakesha Burns was "being offered to impeach prior testimony by a witness [who is] no longer on the stand as to a collateral matter [which is] not admissible under *State* v. *Wilson* [158 Conn. 321, 324, 260 A.2d 571 (1969)].[2] The matter of whether or not . . . these statements that are being offered as to what [Lakesha] Burns may or may not have said to . . . DeMatteo . . . are not . . . directly in line with the matter at hand of whether or not [the defendant] committed the crimes charged." (Footnote added.) The court disagreed with defense counsel's argument that the proffered testimony concerned a collateral matter, concluding, instead, that it went to potential bias and, therefore, had probative value that outweighed any potential prejudice. The court ruled that it would allow the prosecutor to question DeMatteo with respect to (1) whether Lakesha Burns had any contact with the defendant in the time period after the shooting and before the issuance of the arrest warrant on May 2, 2018, and (2) Lakesha Burns' statements to DeMatteo concerning whether she was able to contact the defendant via the phone number that she had provided to DeMatteo.[3]

After issuing its ruling, the court asked defense counsel whether he wanted to supplement the record in any

---

[2] In *State* v. *Wilson*, supra, 158 Conn. 324, our Supreme Court recognized the bar on collateral matters, stating that "[a] witness may not be contradicted on cross-examination as to any answer he may have made on direct examination with respect to an irrelevant or immaterial fact."

[3] Specifically, the court stated: "[T]he two areas that I'll permit [the prosecutor] to question . . . DeMatteo on are first . . . regarding any contact [Lakesha] Burns may have had with her son, the defendant, in the days immediately after the shooting. [Lakesha] Burns testified that she was in touch with [the defendant] either the day of or the day after the shooting. It is my understanding that . . . DeMatteo is prepared to testify that, when he questioned [Lakesha] Burns on that

way, and defense counsel replied by arguing that it was improper to allow the prosecutor to impeach Lakesha Burns' testimony when she was no longer on the witness stand and that the person who is "being impeached by [an] inconsistent statement must be the one that's testifying." The court disagreed, stating: "Well, I think you're . . . speaking of the need to confront the witness with that potentially inconsistent statement. I feel that that falls within the discretion of the court. Under these circumstances, the witness affirmatively . . . stated, when she testified, that she did speak to [the defendant]. . . . I don't see a real need to confront her with what . . . DeMatteo is prepared to testify to today. So, I don't think that that failure is a shortcoming in the . . . appropriateness of the testimony." Thereafter, the jury returned to the courtroom, and the prosecutor questioned DeMatteo in the manner described.

After the prosecutor rested the state's case-in-chief, defense counsel orally moved for a judgment of acquittal, arguing that the evidence presented by the state was insufficient for the jury reasonably to find the defendant guilty of any of the charged offenses beyond a reasonable doubt. The court denied the motion. Defense counsel then called Freeman as his only witness. Defense counsel rested the defendant's case on August 30, 2021, and the

very subject in the days shortly after the . . . shooting, [Lakesha] Burns told . . . DeMatteo that she had not spoken to . . . [the defendant]. . . . A related matter is the use of the phone as a means by which to reach the defendant. [Lakesha] Burns, during her testimony this morning, indicated that she was able to speak to [the defendant] on the phone at the number that she had provided Hartford police. . . . DeMatteo is . . . prepared, as I understand it, to testify that, when he tried that number, he was unable to have the phone connect and, further, that, when he confronted [Lakesha] Burns about his inability to reach [the defendant] through the phone [number that she had provided], she told him that she had experienced the same problem. Now, that to me is diametrically [opposed] to what she testified to on the . . . [witness] stand in those two respects. Just so the record, however, is clear . . . the court is intending to tell the jury that . . . these are prior inconsistent statements offered to impeach her credibility, not for substantive purposes. And you [the prosecutor] will be precluded from arguing . . . that the defendant was in any way eluding capture. All right? That's the court's ruling."

prosecutor and defense counsel made closing remarks the same day.

Thereafter, the jury returned a guilty verdict on all three of the charged offenses. The defendant subsequently was sentenced to a total effective term of twenty-five years of incarceration, execution suspended after seventeen and one-half years, six of which were a mandatory minimum, followed by three years of probation. This appeal followed.

On appeal, the defendant claims that the court abused its discretion in allowing the prosecutor to present testimony from DeMatteo to impeach Lakesha Burns regarding the alleged prior inconsistent statements that she had made. In support of this claim, the defendant contends that **(1)** Lakesha Burns' testimony about her contact with the defendant following the shooting was not inconsistent with her statements to DeMatteo, **(2)** the impeachment evidence related to a collateral matter concerning Lakesha Burns' purported inconsistent statements to the police about her communications with the defendant following the shooting, which was not relevant to her alleged bias as a witness, **(3)** the court improperly failed to require the state to lay a proper foundation for the alleged inconsistent statements, **(4)** the court abused its discretion by permitting the prosecutor to introduce the impeachment evidence through the testimony of DeMatteo, and **(5)** the court's admission of the impeachment evidence was harmful. We are not persuaded that the court's admission of the impeachment evidence constituted an abuse of its discretion.[4]

We first set forth our standard of review. "It is axiomatic that [t]he trial court's ruling on the admissibility

---

[4] The defendant also claims that the prosecutor used DeMatteo's testimony to present consciousness of guilt evidence when the court expressly had denied the prosecutor's request to do so. The state, in response, asserts that the defendant failed to brief this issue adequately, and the defendant did not counter this assertion in his appellate reply brief.

In his principal appellate brief, the defendant did not explain how the prosecutor attempted to circumvent the trial court's ruling and simply cited to the legal principle that "[t]he introduction of the [prior

of evidence is entitled to great deference. . . . In this regard, the trial court is vested with wide discretion in determining the admissibility of evidence, including issues of relevance and the scope of cross-examination. . . . Accordingly, [t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be made in favor of the correctness of the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *Calderon-Perez*, 234 Conn. App. 228, 236, 342 A.3d 1014 (2025).

I

The defendant first claims that Lakesha Burns' testimony about her contact with the defendant following the shooting was not inconsistent with her statements to DeMatteo.[5] This claim is based on the defendant's contention that "[t]he trial court erred in accepting the

inconsistent] statement is improper . . . where the primary purpose of calling the witness is to impeach him and the state's attorney introduces the prior inconsistent statement in hope that the jury will use it substantively." (Internal quotation marks omitted.) *State* v. *Williams*, 204 Conn. 523, 531, 529 A.3d 653 (1987). The defendant devoted a few sentences to this issue and did not provide analysis beyond a bare assertion of the claim. Therefore, we agree with the state and decline to review this claim.

"[W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (Internal quotation marks omitted.) *State* v. *Fetscher*, 162 Conn. App. 145, 155–56, 130 A.3d 892 (2015), cert. denied, 321 Conn. 904, 138 A.3d 280 (2016).

[5] "Our Supreme Court has held that [i]mpeachment of a witness by the use of a prior inconsistent statement is proper only if the two statements

prosecuting authority's misrepresentation of the timing of the communications that Lakesha [Burns] had testified to in order to perceive an inconsistency that did not, in fact, exist." According to the defendant, "the state failed to produce any evidence that Lakesha [Burns] did, in fact, have communications with the defendant *prior to her conversation with DeMatteo*." (Emphasis in original.) Thus, he contends that the testimony of Lakesha Burns that, in the days after the shooting, she spoke with the defendant by phone and that he had returned to her apartment a couple of days after the shooting was not inconsistent with her statements to DeMatteo at the time when she retrieved her vehicle. The state counters that we should decline to review this claim because the defendant did not preserve it at trial and is raising the claim for the first time on appeal. In his appellate reply brief, the defendant asserts that this court should review his claim because his "trial counsel specifically objected to the introduction of an inconsistent statement when that witness is no longer on the stand," and, thus, "[i]t is unclear what talismanic utterance the state would have trial counsel recite to preserve his objection beyond what was expressly raised before the trial court." He also asserts that "the state conflates the nature of the claim preserved [at trial] with the defendant's argument concerning the apparent reason such an error occurred," namely, because "the prosecuting authority . . . misrepresented the nature of the evidence to the trial court . . . ." We agree with the state and decline to review this claim.

Pursuant to Practice Book § 5-5, "[w]henever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he or she desires it to go upon the record . . . ." "[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not

___

are in fact inconsistent." (Internal quotation marks omitted.) *State* v. *Collymore*, 168 Conn. App. 847, 886, 148 A.3d 1059 (2016), aff'd, 334 Conn. 431, 223 A.3d 1 (2020), cert. denied,    U.S.   , 141 S. Ct. 433, 208 L. Ed. 2d 129 (2020).

bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted. . . .

"These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush. . . . *State* v. *Cabral,* 275 Conn. 514, 530–31, 881 A.2d 247, cert. denied, 546 U.S. 1048, 126 S. Ct. 773, 163 L. Ed. 2d 600 (2005)." (Internal quotation marks omitted.) *State* v. *Pagan*, 158 Conn. App. 620, 632–33, 119 A.3d 1259, cert. denied, 319 Conn. 909, 123 A.3d 438 (2015); see also *State* v. *Valle*, 236 Conn. App. 875, 884, 349 A.3d 603 (2025) ("The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked. . . . [It must] alert the trial court to the specific deficiency now claimed on appeal." (Emphasis in original; internal quotation marks omitted.)), cert. denied, 354 Conn. 911, A.3d (2026). "This court reviews rulings solely on the ground on which the party's objection is based. . . . [W]e have consistently declined to review claims based on a ground different from that raised in the trial court . . . ." (Internal quotation marks omitted.) *State* v. *Paul B.*, 143 Conn. App. 691, 704, 70 A.3d 1123 (2013), aff'd, 315 Conn. 19, 105 A.3d 130 (2014); see also *State* v. *Jones*, 210 Conn. App. 249, 277, 269 A.3d 870 ("[W]e conclude that the defendant failed to object on the ground that the two police officers were testifying to an ultimate issue of fact, the applicable objection. We agree with the state that the defendant cannot now challenge the proffered testimony as constituting

improper opinion testimony on an ultimate issue where the only objections raised before the trial court were on the bases of relevance and foundation. See *State* v. *Stenner*, 281 Conn. 742, 755, 917 A.2d 28 ('[t]o permit a party to raise a different ground on appeal than [that] raised during trial would amount to trial by ambuscade, unfair both to the trial court and to the opposing party' . . .), cert. denied, 552 U.S. 883, 128 S. Ct. 290, 169 L. Ed. 2d 139 (2007)."), cert. denied, 343 Conn. 901, 272 A.3d 199 (2022).

At trial, defense counsel never raised a lack of inconsistency as a ground in support of his objection to the court's admission of DeMatteo's testimony concerning the prior inconsistent statements of Lakesha Burns. Rather, defense counsel focused his objection on the grounds that the proffered testimony constituted hearsay, was overly prejudicial and did not evince a consciousness of guilt by the defendant, and because it was "being offered to impeach prior testimony by a witness [who is] no longer on the stand as to a collateral matter . . . ." Moreover, when the court heard argument from the prosecutor and defense counsel concerning the proffered testimony, defense counsel never alerted the court that "the nature of the evidence" was being mispresented by the prosecutor. Accordingly, the defendant cannot now challenge the court's admission of DeMatteo's testimony concerning the inconsistent statements made by Lakesha Burns on those grounds, which were not raised before the trial court. We, therefore, decline to review this claim.[6]

## II

The defendant next challenges the court's admission of DeMatteo's testimony regarding the inconsistent statements made by Lakesha Burns on the ground that the prior inconsistent statements concerned a collateral matter and "did not . . . expose any purported bias" of Lakesha Burns. We disagree.

---

[6] We note that "a determination as to inconsistency lies within the discretionary authority of the trial court." (Internal quotation marks omitted.) *State* v. *D'Amato*, 163 Conn. App. 536, 556, 137 A.3d 38, cert. denied, 321 Conn. 909, 136 A.3d 643 (2016).

"A party may impeach his own witness in the same manner as an opposing party's witness and may demonstrate the witness' bias or bad character for veracity and may impeach the witness using prior inconsistent statements." (Internal quotation marks omitted.) *State* v. *McCarthy*, 105 Conn. App. 596, 613, 939 A.2d 1195, cert. denied, 286 Conn. 913, 944 A.2d 983 (2008). It is well settled that, "[o]rdinarily, extrinsic evidence of prior inconsistent statements cannot be used to contradict the testimony of a witness, and this rule is strictly observed when the witness' testimony relates to a collateral matter. . . . A witness may not be impeached by contradicting his or her testimony as to collateral matters, that is, matters that are not directly relevant and material to the merits of the case. . . . Thus, the answer of the witness on cross-examination to a collateral matter is conclusive and cannot be later contradicted. . . .

"Extrinsic evidence may be admitted, however, if the subject matter of the testimony is not collateral, that is, if it is relevant to a material issue in the case apart from its tendency to contradict the witness. . . . Evidence tending to show the motive, bias or interest of an important witness is never collateral or irrelevant." (Citations omitted; internal quotation marks omitted.) *State* v. *Colton*, 227 Conn. 231, 247–48, 630 A.2d 577 (1993); see also Conn. Code Evid. §6-5 ("[t]he credibility of a witness may be impeached by evidence showing bias for, prejudice against, or interest in any person or matter that might cause the witness to testify falsely").

The commentary to §6-5 of the Connecticut Code of Evidence provides in relevant part: "The range of matters potentially giving rise to bias, prejudice or interest is virtually endless. . . . A witness may be biased by having a friendly feeling toward a person or by favoring a certain position based upon a familial or employment relationship. . . .

"Because evidence tending to show a witness' bias, prejudice or interest is never collateral . . . impeachment of a witness on these matters may be accomplished

through the introduction of extrinsic evidence, in addition to examining the witness directly. . . . The scope and extent of proof through the use of extrinsic evidence are subject to the court's discretion, however . . . and whether extrinsic evidence may be admitted to show bias, prejudice or interest without a foundation is also within the court's discretion." (Citations omitted.) Conn. Code Evid. §6-5, commentary.

Finally, "evidence is probative of bias if a witness' hostility to or sympathy for a party is reasonably inferable from that evidence." *State* v. *Bova*, 240 Conn. 210, 229, 690 A.2d 1370 (1997). Our Supreme Court has held that the credibility of a defendant's parents is "questionable because they are the parents of the defendant and, *even subconsciously*, their parental instincts may have led them to protect their son and [to] offer favorable testimony on his behalf." (Emphasis added.) *State* v. *Greene*, 209 Conn. 458, 473, 551 A.2d 1231 (1988).

In the present case, Lakesha Burns testified that she had phone conversations with the defendant in the days following the shooting. When the prosecutor asked her whether the defendant had returned to her house in "the couple days afterwards," she responded, "[y]es," testifying that, during that time, she had a conversation with the defendant about the shooting in which he claimed to not know what had happened. The prosecutor questioned if she recalled being asked by the police when she picked up her vehicle whether she had seen the defendant, and she replied that she could not recall any conversation at that time. The prosecutor also asked her whether she had "phone contact with [the defendant] in the days afterwards," to which she replied, "[y]es." The prosecutor then asked, "would he answer the phone number that you gave the police," and she replied, "[t]hat was his phone number," and that she had conversations with the defendant. DeMatteo, on the other hand, testified that, at the time Lakesha Burns picked up her vehicle, he had asked her if she had been in contact with the defendant because he needed to talk to the defendant and that "she

stated [that] she had not seen him yet or heard from him." DeMatteo also testified about his unsuccessful attempts to contact the defendant via the phone number provided by Lakesha Burns and his discussion with her about the phone number that she had provided, in which she indicated that she was unable to reach the defendant as well.

The prior inconsistent statements of Lakesha Burns to which DeMatteo testified related to the state's theory of bias in that they showed an interest to protect the defendant, her son, from the efforts of the police to contact him regarding the shooting, as demonstrated by her statements to DeMatteo in the days following the shooting that she had not been in contact with the defendant and was unable to reach him by phone, as compared to her trial testimony to the contrary. "Whether a matter is collateral . . . is a determination that lies within the trial court's sound discretion." (Internal quotation marks omitted.) *State* v. *Bermudez*, 195 Conn. App. 780, 819, 228 A.3d 96 (2020), aff'd, 341 Conn. 233, 267 A.3d 44 (2021). In the present case, making every reasonable presumption in favor of the trial court's ruling, we cannot conclude that the court abused its wide discretion when it determined that DeMatteo's testimony about the prior inconsistent statements of Lakesha Burns did not involve a collateral matter, as those statements tended to establish Lakesha Burns' bias toward the defendant, which is never collateral. See *State* v. *Colton*, supra, 227 Conn. 248; see also *State* v. *Greene*, supra, 209 Conn. 473 ("parental instincts may have led [the defendant's parents] to protect their son and [to] offer favorable testimony on his behalf").[7]

## III

The defendant also claims that the court improperly failed to require the state to lay a proper foundation for the admission of the alleged inconsistent statements of

[7] The state also argues that the court's admission of the challenged testimony from DeMatteo was proper as evidence of the " 'completeness of the investigation' " to rebut the defendant's argument that the police investigation was inadequate. Because we conclude that the court did

Lakesha Burns and, thus, abused its discretion by permitting the prosecutor to introduce the impeachment evidence through the testimony of DeMatteo. According to the defendant, the court should have allowed Lakesha Burns to be confronted with the purported inconsistency because "she may have completely resolved any ambiguity by explaining that she saw or spoke with the defendant after recovering the vehicle from the police station." The defendant concedes that the trial court is vested with "liberal discretion" concerning "whether to admit the impeaching statements where no foundation has been laid." *State* v. *Saia*, 172 Conn. 37, 46, 372 A.2d 144 (1976). The defendant contends, however, that "the present case evidences the danger of permitting the introduction of the purportedly inconsistent statements of a witness absent the requisite foundation."

The state counters by arguing that it did lay a proper foundation for the admission of the inconsistent statements and that, in the alternative, the trial court acted within its discretion by not requiring a foundation to be laid for the prior inconsistent statements. We conclude that we need not determine whether the state laid a proper foundation because the court was within its discretion to admit the prior inconsistent statements in the absence of a foundation being laid for their admission.

Pursuant to §6-10 (a) of the Connecticut Code of Evidence, "[t]he credibility of a witness may be impeached by evidence of a prior inconsistent statement made by the witness." "In examining a witness concerning a prior inconsistent statement, whether written or not, made by the witness, the statement should be shown to or the contents of the statement disclosed to the witness at that time." Conn. Code Evid. §6-10 (b). "If a prior inconsistent statement made by a witness is shown to or if the contents of the statement are disclosed to the witness at the time the witness testifies, and if the witness admits to making the statement, extrinsic evidence of

not abuse its discretion by admitting that testimony on the issue of bias for impeachment purposes, we need not address this argument.

the statement is inadmissible, except in the discretion of the court. *If a prior inconsistent statement made by a witness is not shown to or if the contents of the statement are not disclosed to the witness at the time the witness testifies, extrinsic evidence of the statement is inadmissible, except in the discretion of the court.*" (Emphasis added.) Conn. Code Evid. § 6-10 (c).

Our Supreme Court has stated that, "[i]n this state, we have no inflexible rule regarding the necessity of calling the attention of a witness . . . to his alleged prior inconsistent statements before either questioning him on the subject or introducing extrinsic evidence tending to impeach him. From early times, it has consistently been held that it rests within the judicial discretion of the trial court whether to admit the impeaching statements where no foundation has been laid. . . . The trial court is vested with a liberal discretion as to how the inquiry should be conducted in any given case." (Citation omitted.) *State* v. *Saia*, supra, 172 Conn. 46; see also *Adams* v. *Herald Publishing Co.*, 82 Conn. 448, 452–53, 74 A. 755 (1909) (admitting witness' out-of-court statements that contradicted sworn testimony without calling witness' attention to inconsistency was not reversible error).

Although, "generally, a foundation for introducing the [prior inconsistent] statement should be laid [during the examination] of the witness . . . it rests within the judicial discretion of the trial court whether to admit the impeaching statements where no foundation has been laid. . . . The trial court is vested with a liberal discretion as to how the inquiry should be conducted in any given case." (Internal quotation marks omitted.) *State* v. *Gauthier*, 140 Conn. App. 69, 76, 57 A.3d 849, cert. denied, 308 Conn. 907, 61 A.3d 1097 (2013); see also *State* v. *Collymore*, 168 Conn. App. 847, 887, 148 A.3d 1059 (2016) ("trial [c]ourts have wide discretion whether to admit prior inconsistent statements that have not satisfied the typical foundational requirements in § 6-10 (c) of the Connecticut Code of Evidence" (internal quotation marks omitted)), aff'd, 334 Conn. 431, 223 A.3d 1 (2020),

cert. denied,    U.S.    , 141 S. Ct. 433, 208 L. Ed. 2d 129 (2020); *State* v. *John M.*, 87 Conn. App. 301, 309, 865 A.2d 450 (2005) (§ 6-10 (c) of Connecticut Code of Evidence "clearly indicates that the trial court is vested with wide discretion in determining whether extrinsic evidence of prior inconsistent statements should be admitted in a trial when no foundation has been laid"), aff'd, 285 Conn. 822, 942 A.2d 323 (2008).

In the present case, making every reasonable presumption in favor of the trial court's ruling and in light of the clear language of § 6-10 of the Connecticut Code of Evidence, we conclude that the trial court acted within its broad discretion by admitting into evidence for impeachment purposes DeMatteo's testimony about the prior inconsistent statements of Lakesha Burns, even though she had not been confronted specifically regarding her inconsistent statements to DeMatteo at the time she testified.[8]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] In light of our conclusion that the trial court did not abuse its discretion by admitting DeMatteo's testimony about the prior inconsistent statements of Lakesha Burns for impeachment purposes, we need not address the defendant's claim that he was harmed by the court's admission of that testimony. See *State* v. *Clark*, 191 Conn. App. 191, 200 n.7, 213 A.3d 1166 (2019) ("because we conclude that there was no error, we need not conduct a harmless error analysis"); *State* v. *Dubuisson*, 183 Conn. App. 62, 72 n.8, 191 A.3d 229 ("The defendant also argues that the admittance of the [hearsay] statements was harmful error of a constitutional magnitude. Because we find no error, we decline to address the defendant's claim."), cert. denied, 330 Conn. 914, 193 A.3d 560 (2018).